**BALTIMORE NEIGHBORHOODS, INC., and Kevin Beverly**

v.

**ROMMEL BUILDERS, INC. John A. Rommel, Lob Inc., and Lions Gate Garden Condominium, Inc.**

**No. Civ.A B–96–914.**

United States District Court, D. Maryland.

March 15, 1999.

Lauren E. Willis, Andrew D. Levy, Brown, Goldstein & Levy, LLC, of Baltimore, MD, for plaintiffs.

Donald B.W. Messenger, of Beltsville, MD, for defendant Rommel Builders, Inc.

Michael P. Darrow, M. Evelyn Spurgin, Hillman, Brown and Darrow of Annapolis, MD, for defendants John A. Rommel and LOB, Inc.

Frederick C. Sussman, Susan H. Stobbart, Council, Baradel, Kosmerl & Nolan, P.A., of Annapolis, MD, for defendant Lions Gate Garden Condominum.

Isabelle Katz Pinzler, Acting Assistant Attorney General, Civil Rights Division, Joan A. Magagna, Chief, Brian F. Heffernan, Esquire, Deputy Chief, and Myron S. Lehtman, Senior Trial Attorney, Housing and Civil Enforcement Section of the Civil Rights Division of the Department of Justice, Washington, D.C., and Lynne A. Battaglia, United States Attorney and Kaye A. Allison, Assistant United States Attor-

ney, of Baltimore, MD, for the United States as Amicus Curiae.

## MEMORANDUM OPINION

WALTER E. BLACK, Jr., Senior District Judge.

Presently pending before the Court are four motions for summary judgment: (1) a Motion for Summary Judgment (Paper 47) and Supplement (Paper 64) filed on behalf of defendants, LOB, Inc. ("LOB") and John Rommel ("Rommel"), members of the Lions Gate Joint Venture, (2) a Motion for Joinder in Motion for Summary Judgment or Alternatively, Motion for Partial Summary Judgment (Paper 57) and a Motion for Joinder in Supplement (Paper 67) filed on behalf of defendant Rommel Builders, Inc. ("Rommel Builders"), a construction company that built Lions Gate Garden Condominiums ("Lions Gate") located in Anne Arundel County, Maryland, (3) a Motion for Summary Judgment (Paper 63) and Supplement (Paper 65) filed on behalf of defendant Lions Gate Garden Condominium, Inc. ("LGGCI"), and (4) a Second Motion for Summary Judgment as to Liability (Paper 68) filed on behalf of plaintiffs, Baltimore Neighborhoods, Inc. ("BNI"), a nonprofit corporation which promotes equal housing opportunities, and Kevin Beverly, a handicapped individual who uses a wheelchair for mobility. Plaintiffs expressly incorporate their memoranda filed in support of their first motion for summary judgment (Papers 23 and 32), and the Court has had the benefit of an amicus brief in support of plaintiffs' memoranda filed by the United States Department of Justice (Paper 35).

On March 26, 1996, plaintiffs sued Rommel Builders alleging a failure to comply with the accessibility requirements of the Fair Housing Amendments Act of 1986 ("FHAA"), 42 U.S.C. § 3604(f) (Civil No. B–96–914). Specifically, the complaint alleged that Rommel Builders owns, and is involved in building and developing a condominium complex known as Lions Gate and that this complex's three-story multi-family dwellings are not wheelchair accessible.

On January 14, 1997, plaintiffs sued defendants Berkus Group Architects, Inc.[1], Rommel, LOB, and LGGCI (Civil No. B–97–120), alleging discrimination in violation of the FHAA and Title III of the American with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.* (the "ADA").[2]

Prior to the filing of the instant motions, defendant Rommel Builders and plaintiffs filed cross motions for summary judgment. On May 6, 1998, the Court denied Rommel Builders' motion and denied plaintiffs' motion without prejudice. On the same date, upon motions of plaintiffs in both suits, the Court consolidated cases B–96–914 and B–97–120. Plaintiffs subsequently filed a third amended complaint in the consolidated case on June 25, 1998, incorporating all claims against all defendants.

### I.

In the motion filed on behalf of LOB and Rommel, as well as Rommel Builders and LGGCI by joinder, defendants seek the entry of summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on six grounds: (1) that the location of the sales office did not violate the ADA; (2) that Lions Gate is exempt from the requirements of the FHAA because the infrastructure was completed before the statute was in effect; (3) that requiring the site work to be redone would have been unduly burdensome and unreasonable; (4) that defendants designed and constructed Lions Gate in compliance with § 3604(f)(3)(C)(iii) because the term

---

1. Plaintiffs' Motion for Entry of Default was granted as to Berkus Group Architects, Inc. by Order of the Court on July 30, 1997. (Paper 28 in 97–120)

2. Anarex, Inc., the engineer for the site, was added by plaintiffs in their amended complaint; however, the Court subsequently granted its motion for summary judgment on August 31, 1998.

"adaptive design" only requires providing accessible features upon request; (5) that the creation of the condominium regime prevented defendants from altering the site, the roadways, or the record plat once the FHAA was in effect; and (6) that the damages requested are inappropriate.

In addition, Rommel Builders seeks partial summary judgment on two grounds: (1) that Rommel Builders cannot be liable for the ADA violation because it had no involvement in the location or operation of the sales office; and (2) that Rommel Builders cannot be liable for FHAA violations beyond the actual buildings because it had no involvement with any part of the condominium complex other than the construction of the buildings.

Finally, defendants LOB and Rommel, joined by Rommel Builders and LGGCI, filed a supplemental memorandum adding that plaintiffs' claims are barred by the statute of limitations and laches.

Defendant LGGCI filed its motion for summary judgment asserting: (1) that it did not design or construct Lions Gate and is therefore not liable under § 3604(f) of the FHAA; (2) that there is no evidence that trash facilities are inaccessible; (3) that LGGCI should not be a party to the suit because there are no allegations of any other violation of the FHAA; and (4) that LGGCI did not violate the ADA because it had no involvement with the sales office.

In their second motion for summary judgment, plaintiffs seek summary judgment on the ADA claim against LOB and Rommel who designed and constructed the inaccessible Lions Gate sales center. As to the FHAA claims, plaintiffs move for summary judgment against LOB, Rommel, and Rommel Builders on the grounds that: (1) Buildings 3–13 are covered by the FHAA; and (2) the parking areas, sidewalks, doors within the premises, and various features of the first floor units in Buildings 3–13 violate the FHAA. Plaintiffs specifically note they are not seeking summary judgment against LGGCI; how-ever, they request the Court to retain LGGCI in the case to effectuate any injunctive relief awarded.

## II.

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment can only be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 884, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Summary judgment is not appropriate unless, viewing the possible inferences in a light most favorable to the non-moving party, no reasonable jury could return a verdict in its favor. *Helm v. Western Maryland Ry. Co.,* 838 F.2d 729, 734 (4th Cir.1988); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505. It should also be noted that in the Fourth Circuit the standard for summary judgment is strict, and that summary judgment is inappropriate even if merely the inferences to be drawn from the facts are in dispute. *Morrison v. Nissan Motor Co., Ltd.,* 601 F.2d 139, 141 (4th Cir.1979); *Pulliam Inv. Co., Inc. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987).

Nonetheless, when a motion for summary judgment has been made and supported, Rule 56(e) provides that an adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. The mere existence of a scintilla of evidence is insufficient. Rather, there must be evidence from which the jury could reasonably find for the nonmoving party. *Anderson,* 477 U.S. at 251, 106 S.Ct.

2505. In the absence of such a minimal showing, the moving party should not be required to undergo the considerable expense of preparing for and participating in a trial.

In any event, however, a trial court may deny summary judgment "in a case where there is reason to believe that the better course would be to proceed to a full trial." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Such an approach harmonizes well with the court's duty to exercise caution in resolving motions for summary judgment.

### III.

The FHAA makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of (A) that buyer or renter . . . ." 42 U.S.C. § 3604(f)(1). Further, § 3604(f)(2) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—(A) that person . . . ." Pursuant to the FHAA, discrimination includes, "in connection with the design and construction of covered multifamily dwellings . . . a failure to design and construct" such dwellings in accordance with the accessibility and adaptability design features outlined in the statute. *Id.* § 3604(f)(3) The general requirements include making public use and common use areas "readily accessible and usable by handicapped persons," making doorways wide enough to accommodate wheelchairs, as well as enumerated "features of adaptive design" including an accessible route into and through the dwelling, switches and other controls in accessible locations, reinforcement in bathroom walls to allow later installation of grab bars, and usable kitchens and bathrooms so that a wheelchair can maneuver about the space. *Id.* § 3504(f)(3)(C)(iii). The FHAA provided for it to be effective on the date that is 30–months after September 13, 1988, the date of enactment. *Id.* § 3604(f)(3)(C).

The ADA was subsequently enacted on July 26, 1990, and provides in relevant part:

**§ 12183. New construction and alterations in public accommodations and commercial facilities .**

**(a) Application of term**

Except as provided in subsection (b) of this section, as applied to public accommodations and commercial facilities, discrimination for purposes of section 12182(a) of this title includes—

(1) a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities . . . .

42 U.S.C. § 12183(a)(1).

Public accommodations as defined in the ADA include, *inter alia,* a "sales or rental establishment." *Id.* § 12181(7)(E).

A. *Defendants LOB, John Rommel, and Rommel Builders' Motion for Summary Judgment*

 The first ground of defendants' motion is that the Lions Gate sales office did not violate the ADA. Defendants contend that the sales office for Lions Gate was actually a model unit which is not a "public accommodation" requiring accessibility. In response, plaintiffs oppose the characterization of the sales office as a model unit. Plaintiffs present evidence that the sales center has been labeled a "Sales Center" and "Information Center" at Lions Gate and assert that defendants cannot simply rename the sales center a model unit to escape liability.

The Court finds that the evidence in the form of pictures submitted by plaintiffs that the sales office has been labeled a "Sales Center" or "Information Center" is sufficient to withstand defendants' summary judgment challenge. Even if the sales office also functions as a model unit, the passage from the ADA *Technical As-*

*sistance Manual* excerpted by defendants does not support their theory that the sales office at Lions Gate is necessarily exempt from the ADA. That passage states in part:

> Are model homes places of public accommodation? Generally, no. A model home does not fall under one of the 12 categories of places of public accommodation. *If, however, the sales office for a residential housing development were located in a model home, the area used for the sales office would be considered a place of public accommodation.*

*The American with Disabilities Act Title III Technical Assistance Manual,* 28 C.F.R. 36.102–36.10, III–1.2000 (emphasis added). The unmistakable implication from the passage cited by defendants is that a sales office does not lose its status as a place of public accommodation because it is located in a model unit. Rather, a sales office whether in a model unit or not must be accessible to persons with disabilities under the ADA as a place of public accommodation. The Court cannot find as a matter of law that the sales center at Lions Gate need not be accessible because it is located in the model unit. Moreover, the advertisements submitted by defendants listing different phone numbers for the "model" and the "office" further put in dispute the nature of the business being done in the information center/model unit was located at Lions Gate. Accordingly, defendants' motion will be denied on this ground.

Second, defendants argue that Lions Gate is exempt from the FHAA because the infrastructure was completed before the effective date of the statute and therefore, "buildings that are not on an accessible route are not required to have the 'features of adaptive design' listed in the statute." Defendants base their theory on 24 C.F.R. § 100.205(a), which states in part: "Covered multifamily dwellings for first occupancy after March 13, 1991 shall be designed and constructed to have at least one building entrance on an accessi-

ble route unless it is impractical to do so because of the terrain or unusual characteristics of the site." Defendants state that all the preliminary work that served as the basis for the routes to the buildings was done prior to the enactment of the FHAA. From this regulation, defendants argue Lions Gate, which had inaccessible site work completed prior to March 13, 1991, does not need to have buildings which meet the accessibility requirements of the FHAA.

■ Plaintiffs respond arguing there is no exemption in the FHAA for developments where the site work was done prior to the effective date of the Act. The Court also finds defendants' exemption argument without merit. Defendants' reliance 24 C.F.R. § 100.205 is far from conclusive. The Court is not persuaded that this excerpt from the regulations implies that buildings built on inaccessible routes predating the effective date need not comply with the FHAA despite first use and occupancy permits after March 13, 1991. The Court will accordingly deny defendants' motion as to this exemption issue, but notes that this ruling is not intended to establish the existence of any violations of the FHAA or prevent a finding of liability in favor of plaintiffs on summary judgment.

■ Third, defendants argue that Lions Gate should be exempt from the FHAA because it would have been unduly burdensome and unreasonable to require LOB and Rommel to redo the site work to make the buildings accessible. Defendants attempt to inject a reasonableness defense into § 3604(f) from the existence of reasonableness in other parts of the FHAA, especially in the existence of a 30–month grace period. Furthermore, defendants argue that their expert, Daniel Werner, suggests in his letter to LOB on February 3, 1998, that it is "highly unlikely that substantial changes could have been made to these [infrastructure] plans." *See* Letter from Daniel J. Werner, Engineer,

Anarex, Inc., to Patricia Baldwin, LOB, Inc. (February 3, 1998).

Plaintiffs resist defendants' attempt to create a burdensome exemption to the FHAA. According to plaintiffs, Congress intended the 30–month grace period as the time for developers to redo noncomplying designs and construct the site in accordance with the FHAA requirements. Plaintiffs suggest defendants do not deserve an inaccessible site defense where they "barreled ahead with the inaccessible plans" during the 30–month grace period.

The Court finds defendants' burdensome argument unpersuasive as it rests on no authority within or beyond the statute. Accordingly, defendants' motion will be denied on this ground.

■ Fourth, defendants argue that the term "adaptive design" found in § 3604(f)(3)(C)(iii) should be interpreted to mean defendants are required only to provide accessible features upon request. Defendants contend that this interpretation is consistent with the statutory construction of § 3604(f)(3)(C). Accordingly, defendants argue that Lions Gate was designed and constructed in compliance with their interpretation of § 3604(f)(3)(C)(iii) and summary judgment should be granted.

Plaintiffs respond claiming the term "adaptive design" is a term of art and is not superfluous, and that referencing "adaptive design" clarifies the requirements in the subsection. Plaintiffs cite an administrative opinion, *HUD v. Perland Corp.*, 1998 WL 142159 (HUD ALJ–05–96–1517–8 Mar. 30, 1998), for a case where defendants were found liable for constructing electrical outlets in inaccessible locations, failing to reinforce bathroom walls, and constructing unusable kitchens and bathrooms in violation of § 3604(f)(3)(c)(iii). *Id.* at 7–9.

The Court is convinced after reviewing the record on this issue and in particular plaintiffs' supplemental memorandum to its first motion for summary judgment filed on November 12, 1997, and the ami-cus brief filed by the Department of Justice on November 10, 1997, that the term "adaptive design" is a term of art in the construction industry and does not qualify in any way the requirements listed in § 3604(f)(3)(C)(iii) as defendants suggest. Plaintiffs refer to pertinent portions of the legislative history and industry commentary which establish the meaning of the phrase "adaptive design" as it was used in the FHAA. According to a House Report:

> [T]he Committee intends to use a standard of "adaptable" design, a standard developed in recent years by the building industry and by advocates for handicapped individuals to provide usable housing for handicapped persons without necessarily being significantly different from conventional housing. This subsection sets forth certain features of adaptive design to be incorporated in new multifamily housing construction.

H.R.Rep. No. 100–711, 26, *reprinted in* 1988 U.S.C.C.A.N. at 2173, 2187.

■ The purpose of adaptive design is thus to design and construct the actual units in such a way that they have basic accessible features for disabled persons without being any different from a standard unit. This makes sense when viewed in the context of the statute. Sections 3604(f)(3)(C)(i) and (ii) refer to more general aspects of a multifamily dwelling such as the curbs, parking spaces, sidewalks, main entrances, mailboxes, and other features that are used by all inhabitants of the dwelling. Recognizing that individual disabilities may require various levels of accessible features within the actual units, Congress further required basic features of adaptability as understood in the construction industry inside the individual units.

One such commentary referred to in the House Report was developed by Barrier Free Environments, Inc. for the United States Department of Housing and Urban Development. This commentary further clarifies the term used by Congress in

drafting the FHAA and expressly puts to rest defendants' suggested interpretation:

> Some building industry people have thought that an adaptable unit was a standard unit that would be remodeled if a disabled person wanted to move in and required certain accessible features. This remodeling would widen doors, add an accessible entrance, remodel kitchens and bathrooms, and provide accessible storage. Owners who have made this interpretation have called for a 60 to 90 day waiting period. In today's mobile society, it is unrealistic to subject a tenant to a wait of two to three months for an apartment.

> Truly adaptable units can be adjusted or adapted *without* renovation or structural change because the basic accessible features like door widths and ground level entrance are already part of the unit. Non-structural adaptations include ... attaching grab bars if needed. These changes can be made without delaying occupancy by the new tenant.

Barrier Free Environments, Inc., Department of Housing and Urban Development Office of Policy Development and Research, "Adaptable Housing," 8 (1987) (emphasis in original).

The literature from the industry and the legislative history persuades the Court that Congress included the phrase "features of adaptive design" in § 3604(f)(3)(C)(iii) as a term of art to indicate that the specifications listed were four of the features of adaptive design required by the FHAA. This presumably implies that there are other features of adaptive design that Congress did not require to be included in new construction. Nevertheless, the Court finds § 3604(f)(3)(C)(iii) requires covered multifamily dwellings to contain the four features listed, and accordingly the Court will deny defendants' motion on this ground. The effect of this ruling does not conclusively establish liability, but only rejects defendants' interpretation defense and leaves open a finding of liability as a matter of law in favor of plaintiffs on summary judgment.

Fifth, defendants move for summary judgment asserting that they had no authority to make changes to the site, the roadways, or the record plat after the effective date of the FHAA because the condominium regime had been created. The condominium regime, LGGCI, was created by December 1990 when the first units were purchased. Thus, after December 1990, LOB and Rommel could no longer make alterations to the property as developers and owners, but rather stood in the same shoes as unit owners and mortgagees. Defendants explain that even isolated changes to the site would have resulted in a domino effect encroaching on the common areas owned by the condominium owners.

Plaintiffs respond contending that the existence of the condominium regime provides no defense for developers and builders. Plaintiffs explain that as of the effective date of the FHAA, only Buildings 1 and 2 were subject to the condominium regime and those buildings are not the subjects of plaintiffs' complaint. Plaintiffs also point out that defendants built Building 13 with various accessibility features prior to the regime's control of the building without any permission from LGGCI and defendants made other changes to the site without the permission of LGGCI, thus reflecting that no permission was required while the buildings and areas were not in control of the condominium regime.

■ The Court finds the facts involved in this dispute are muddled as to the dates each area became subject to the control of the condominium regime. Regardless, the issue is not whether LOB, Rommel, or Rommel Builders should have modified inaccessible portions of the buildings, but rather, whether the buildings contained inaccessible features in violation of the FHAA's substantive requirements. For this reason, defendant has not proven as a matter of law that the condominium regime's control affected LOB, Rommel, or

Rommel Builders' liability for designing and constructing Lions Gate in violation of § 3604(f)(3)(C). Accordingly, the Court will deny defendants' motion on this ground, again, noting that such ruling does not itself establish any liability as a matter of law or impede a granting of summary judgment in favor of plaintiffs.

■ Sixth, defendants argue that certain damages requested by plaintiffs should be prohibited as a matter of law. At this juncture in the case, the Court finds the issues relating to damages are largely a matter of disputed fact and more appropriate for resolution by the fact finder. Furthermore, whether or not there was recklessness, callousness, or intentional violations by defendants to justify punitive damages is clearly an issue of fact on which the Court is unable to rule at this time as a matter of law. Accordingly, the Court will deny defendants' motion on all damages issues.

Finally, defendants in their supplemental memorandum argue that plaintiffs' claims should be dismissed because they are barred by the FHA's statute of limitations and laches. Defendants contend plaintiffs are barred by the two-year statute of limitations because the claim was filed more than two years after the common areas of Lions Gate were designed and constructed and more than two years after the use and occupancy permits were granted for Buildings 3–11. Defendants request summary judgment on this ground for Buildings 3–11. Defendants argue that plaintiffs were put on notice of any alleged violations upon the issuance of the use and occupancy permits for the buildings. They further argue that the issuance of the use and occupancy permits is an appropriate time for limitations to begin because it determines whether the buildings are subject to the FHAA, it is the first time the buildings are available to the public, and it is the time when all events necessary to state a claim occurred. Defendants thus conclude that allowing suits to be filed six years after the buildings were completed would defeat the purpose of the 2–year statute of limitations.

The limitations provision of the FHAA is found at § 3613(a)(1)(A) which states in relevant part:

> An aggrieved person may commence a civil action in an appropriate United States district court or State court *not later than 2 years after the occurrence or the termination of an alleged discriminatory housing* practice....

(emphasis added).

■ The operative words in this limitations provision are "after the occurrence or the termination." In applying the appropriate limitations doctrine to the FHAA, the Court must be careful to preserve the meaning of the operative words in the statute. In *Community Interactions Bucks County, Inc. v. Township of Bensalem,* 5 A.D.D. 933, 1994 WL 276476 (E.D.Pa. June 22, 1994), the court concluded that Congress intended the continuing violations doctrine to apply in FHAA cases. *Id.* at *5 (applying the continuing violation doctrine but finding that the denial of a zoning permit and other discrete acts occurred more than two years prior to the filing of the suit). That court opined that the inclusion of the word "termination" " 'is to reaffirm the concept of continuing violations, under which the statute of limitations is measured from the date of the last asserted occurrence of the unlawful practice.' " *Id.* (quoting H.R.Rep. No. 100–711 at 33 (1988)), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2194. Likewise, the Northern District of Illinois determined that the continuing violation doctrine applies to FHAA cases. *See Simovits v. Chanticleer Condominium Ass'n,* 933 F.Supp. 1394, 1404 (N.D.Ill.1996) (holding the limitations period begins on the date of the "last asserted occurrence" of the discriminatory practice). Recognizing the reasoning of these courts, the legislative history, and the operative words of the limitations provision in § 3613(a)(1)(A), this Court finds that the continuing viola-

tions doctrine is the appropriate and intended rule to apply to the FHAA limitations provision.

■ Under the continuing violation doctrine of limitations, the limitations period does not begin to run until the happening of the "last asserted occurrence" of discrimination. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). The *Havens* Court, in applying this doctrine to a Fair Housing Act claim stated: "where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when filed within [2 years] of the last asserted occurrence of that practice." *Id.* at 380–81, 102 S.Ct. 1114. The Court found that the continuing policy of racial steering including one incident within the limitations period rendered respondents' complaint timely. *Id.* at 381, 102 S.Ct. 1114.

■ In this case, plaintiffs claim that defendants discriminated "in the sale or rental [of] ... a dwelling ... to a buyer or renter because of a handicap ..." § 3604(f)(1). The statute targets new construction and explicitly prohibits discrimination "in connection with the design and construction of covered multifamily dwellings for first occupancy after the first date that is 30 months after September 13, 1988...." § 3604(f)(3)(C). Thus, plaintiffs BNI and Beverly claim a continuing violation in the sale of alleged inaccessible new construction. As such, the limitations period does not begin to run until the last occurrence of the violations which the Court finds to be the sale of the last inaccessible unit in light of the language in § 3604(f)(1). The record before the Court indicates there were ground floor units being sold well within two years from the date the second complaint was filed on January 14, 1997. In the alternative, even if the limitations period was found to start upon Beverly's visit to Lions Gate in February 1996, the two suits were both filed within two years of that date. The claims are thus timely and the Court will deny defendants' motion on this ground.

Furthermore, defendants also claim plaintiffs' suits are barred by laches because there was a lack of diligence on the part of plaintiffs and resulting prejudice to defendants. Defendants cite the six-year lapse between the issuance of the first use and occupancy permits and the filing of the suit against LOB and Rommel in January 1997, as evidence of a lack of diligence by plaintiffs. As to defendants' prejudice, defendants cite the lack of opportunity to have made modifications during construction as opposed to after the buildings had been completed.

■ Laches is an affirmative defense to equitable claims. *White v. Daniel*, 909 F.2d 99, 102 (4th Cir.1990). To prevail on this defense, defendant must establish: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Id.* (internal quotations omitted) (citations omitted). The Court is unable to find plaintiffs lacked diligence in filing their complaints in 1996 and 1997 against defendants in this case. In addition, defendants' assertion of prejudice is unpersuasive. Given that the statute of limitations had not·even begun to run when the suits were filed and that Beverly's visit to Lions Gate occurred in February 1996, as a matter of law, the Court cannot find laches bars plaintiffs' claims. Accordingly, the Court will deny defendants' motion on this ground as well.

B. *Defendant Rommel Builder's Motion for Partial Summary Judgment*

While joining in defendants LOB and Rommel's motion for summary judgment and supplement, Rommel Builders also moves for partial summary judgment on two grounds. First, Rommel Builders contends that it is not liable under the ADA for violations involving the sales office at Lions Gate because it had no in-

volvement in the location or operation of the sales office. Second, Rommel Builders seeks a ruling that it has no liability for alleged violations of the FHAA in any part of the Lions Gate site beyond the construction of the buildings. Rommel Builders contends there is no evidence presented showing Rommel Builders did anything beyond constructing the buildings as it was required to do by contract.[3]

In response, plaintiffs note at the outset of their cross motion for summary judgment that they do not seek summary judgment on the ADA claim against Rommel Builders. In this regard, the Court will assume that plaintiffs are not pursuing the ADA claim against Rommel Builders and will grant Rommel Builders' motion on this claim. As to Rommel Builders' motion for summary judgment on the alleged FHAA violations outside the buildings, plaintiffs stated at the hearing on the motions that they are not pressing liability against Rommel builders beyond any alleged violations in the buildings themselves. In light of this representation, the Court will grant Rommel Builders' motion on all liability issues relating to FHAA violations beyond the buildings. Accordingly, defendant Rommel Builders' motion for partial summary judgment will be granted.

## C. *Defendant LGGCI's Motion for Summary Judgment*

LGGCI, the condominium association at Lions Gate, moves for summary judgment contending it did not violate either the ADA or the FFHA. First, LGGCI argues it did not design or construct any part of the Lions Gate site or buildings and cites from the deposition of Christina O'Meara, a principal of LOB, to establish LGGCI had no involvement with any of the design or construction. LGGCI therefore vigorously disputes plaintiffs' insistence on keeping it as a defendant in the case for

remedial relief purposes only. LGGCI asserts that the joinder rule of the Federal Rule of Civil Procedure, Rule 19(a), is not applicable here where the inquiry is whether the case can go forward without a defendant who was named as a party to the suit in the complaint. Most significantly, LGGCI cites 42 U.S.C. § 3613(d) as support for its argument that it is not a proper relief defendant in this case. Section 3613(d) states:

**(d) Effect on certain sales, encumbrances, and rentals**

Relief granted under this section shall not affect any contract, sale, encumbrance, or lease consummated before the granting of such relief and involving a bona fide purchaser, encumbrancer, or tenant, without actual notice of the filing of a complaint with the Secretary or civil action under this subchapter.

*Id.*

LGGCI argues that any retrofitting relief ordered by the Court would necessarily impinge on it and the individual unit owners' property rights and would thus violate § 3613(d). Finally, LGGCI also argues that it had no involvement in the design or construction of the sales office and should therefore be granted summary judgment on the ADA claim.

In response, plaintiffs agree to dismiss the ADA claim against LGGCI. Accordingly, LGGCI's motion is granted as to the ADA claim. Plaintiffs also state they do not seek liability for FHAA violations against LGGCI. Nevertheless, plaintiffs seek to continue to maintain LGGCI as a defendant in the case to effectuate the injunctive relief sought. Plaintiffs argue that the law of equity permits the joinder of defendants who are not at fault where their ownership or control of real property is necessary to achieve the remedy. Plain-

---

**3.** In addition, Rommel Builders seeks exclusion of any expert testimony relating to alleged violations within the condominium units on the basis that a prior Order of the Court prevented use by plaintiffs of expert testimony against Rommel Builders. Rommel Builders' request is better addressed, if necessary, in an appropriate motion in limine rather than as part of this Motion for Partial Summary Judgment.

tiffs do not seek to have LGGCI contribute to any monetary damages or pay for the retrofitting that may be ordered, but rather they seek to require LGGCI to permit the ordered relief in the form of retrofitting the common areas of the property. Plaintiffs assert that they do not seek an order to retrofit individual units because they recognize the balance of the equities would not permit such relief.

Plaintiffs argue that § 3613(d) should not be read so broadly as to prevent retrofitting to common areas of a condominium. Plaintiffs interpret § 3613(d) to prohibit relief that would result in voiding a sale or lease to a bona fide purchaser which would not be the case where a court orders the retrofitting of common areas under the control of the condominium regime. Section 3613(d) could have explicitly prohibited any effects on property interests of bona fide purchasers, but such broad language was not used. Plaintiffs point out that § 3613(d) was drafted as part of the original FHA of 1968 and served to prevent courts from effectively evicting white tenants from apartments where there existed racial discrimination in housing. However, plaintiffs argue that § 3613(d) would not prevent a court from invalidating a racially restrictive covenant in violation of the FHA and ordering remedial advertising. Such relief arguably affects the bona fide purchasers' rights where such purchasers bought their condominiums in reliance on the illegal covenant. Plaintiffs compare that situation to · the facts in this case. Plaintiffs also contend that the individual unit owners and the condominium association may not have done anything wrong, but they are successors-in-interest to the developer which did violate the FHAA. As a result, the violations will continue to exist in perpetuity unless the Court exercises its equitable remedies to fashion a reasonable remedy.

The Court is persuaded that it is appropriate to keep LGGCI in the case so long as it represents the owners of the common areas with alleged violations.

LGGCI's presence as a party in the suit appears imperative in order to afford full relief, if necessary, recognizing it bears no financial obligation to plaintiffs in this case. Section 3613(d) should be read narrowly allowing courts to order retrofitting relief to common areas while being mindful that the least intrusive remedies must be employed when possible.

The Court notes an analogous case, *Simovits v. Chanticleer Condominium Ass'n*, 933 F.Supp. 1394 (N.D.Ill.1996), in which the court ordered a condominium association to amend its bylaws to revoke an illegal age restrictive covenant prohibiting children from living in the building and to notify real estate firms in the area of this revocation. *Id.* at 1408. This injunctive relief affected the rights of the bona fide purchasers who bought their condominiums because they preferred a building without children; however, the court in *Simovits* granted the equitable relief sought.

In this case, plaintiffs are not seeking an order to retrofit individual units owned by bona fide purchasers, but rather for an order establishing a fund for retrofitting common areas owned in undivided, equal shares by the individual owners and controlled by LGGCI. LGGCI concedes that it has architectural control over the common areas at the condominium so presumably it would have the authority to permit retrofitting to the common areas. This relief sought is akin to the relief ordered in *Simovits* where the sales of individual units were not voided, but some aspect of bona fide purchasers' property rights were affected. To read ´3613(d) as prohibiting such relief, would result in a right without a remedy. The Court recognizes that equitable remedies are determined by a balancing of interests. At this time, the Court cannot find the equities are so outweighed as to foreclose some form of relief under the law. Accordingly, the Court will deny LGGCI's motion for summary judgment on this ground.

In addition, LGGCI filed a supplement to its motion on October 5, 1998, adopting the limitations and laches defenses set forth in defendants LOB and Rommel's supplemental motion. Consistent with the Court's ruling, *supra,* LGGCI's motion is also denied on limitations and laches grounds.

### D. *Plaintiffs' Second Motion for Summary Judgment .*

Plaintiffs filed a Second Motion for Summary Judgment on October 14, 1998, on the grounds that they have established as a matter of law both an ADA violation and FHAA violations committed by defendants, LOB, Rommel, and Rommel Builders. As mentioned *supra,* plaintiffs also seek to keep LGGCI as a defendant for the purpose of effectuating any injunctive relief ordered by the Court.

With respect to the ADA, plaintiffs assert that LOB and Rommel, as owners and developers, have committed violations as a matter of law with respect to the inaccessibility of the sales center at Lions Gate. Plaintiffs contend that the sales center at Lions Gate was located at the site and that at the time Beverly went to visit Lions Gate, the office was inaccessible to him. Plaintiffs also refer to LOB's answers to interrogatories where it states that the sales center has always been placed in a second or third floor unit.

As explained earlier in this opinion in addressing defendants LOB and Rommel's motion for summary judgment on the ADA claim, there are disputed issues of fact regarding the information center/model at Lions Gate, specifically, whether the center qualifies as a sales establishment within the meaning of the ADA or whether it is only a model unit. Accordingly, the Court denies plaintiffs' motion as to LOB and Rommel on this ground.[4]

Plaintiffs further request summary judgment on the FHAA claims. Plaintiffs first submit that the first floor units in Buildings 3–13 are covered by the FHAA because they are multifamily dwellings as defined in § 3604(f)(7) and the use and occupancy permits for these buildings were issued after March 13, 1991, the effective date of the Act. Next, plaintiffs proceed to enumerate the substantive violations at Lions Gate as follows: (1) a lack of handicapped parking and the existence of steps in the sidewalks between the parking and Buildings 3–13; (2) insufficiently wide interior doorways inside all ground floor units in Buildings 3–12; (3) a step up into every ground floor unit in Buildings 3–12 and a step down to every balcony in the ground floor units in Buildings 3–13; (4) insufficient clearance space to maneuver on the latch side of a door with a closer in the rear ground floor units of Buildings 3–13; (5) twist doorknobs on exterior doors of all ground floor units in Buildings 3–13; (6) a lack of reinforced bathroom walls for later installation of grab bars in ground floor units of Buildings 3–12; (7) insufficient clearance in bathrooms in all ground floor units of Buildings 3–13; (8) unadjustable countertops in kitchens in all ground floor units of Buildings 3–13; and (9) insufficient clearance in kitchens of rear units of Buildings 3–13. Furthermore, plaintiffs indicate that, due to the fact that they have been unable to enter the units, they have not been able to determine whether light switches, electrical outlets, thermostats and other controls are accessible.

█ The Court is satisfied that plaintiffs have established all of the allegations of FHAA violations, with the exception of the lack of reinforcements in the bathrooms, as a matter of law. Defendants do not substantively dispute any of the alleged violations except the lack of reinforcements in the bathrooms. Further,

---

4. Plaintiffs represented to the Court that they are not pursuing the ADA claim against LGGCI or Rommel Builders.

the Court has before it floor plans, deposition testimony, and photographs which establish undisputed facts regarding the alleged violations. Defendants allege sufficient facts to withstand a motion for summary judgment only in regard to the alleged lack of reinforcements in the bathrooms for the later installment of grab bars. Michael Baldwin of Rommel Builders testified that the existing two layers of sheetrock and studs which are 12 inches on center would be sufficient reinforcement for grab bars.[5] In light of this testimony, the Court finds it is a matter of disputed fact whether the existing walls in the bathrooms of first floor units in Buildings 3–12 satisfy the reinforcements requirement of § 3604(f)(3)(C)(iii)(III). Consistent with the Court's earlier rulings in this opinion regarding three affirmative defenses of defendants which do not impede summary judgment for plaintiffs: that Lions Gate is exempt from the FHAA because the site work was completed prior to the effective date of the Act; (2) that the term "adaptive design" only requires defendants to provide accessible features upon request; and (3) that the condominium regime prevented defendants from making alterations to the site, roadways, or record plat, the Court will grant in part and deny in part plaintiffs' motion for liability, and therefore defendants LOB, Rommel, and Rommel Builders[6] are liable jointly and severally as a matter of law for all alleged violations with the exception of the lack of reinforcements in the bathrooms. As requested by plaintiffs, damages and equitable relief will be determined at trial along with the remaining disputed issues of material fact regarding the alleged lack of reinforcements in the bathrooms and the alleged inaccessibility of the sales center.

## IV.

For all the foregoing reasons, the Court will deny defendants LOB, Rommel, and Rommel Builders' Motion for Summary Judgment (Paper 47) and Supplement (Paper 64), grant defendant Rommel Builder's Motion for Joinder in Defendants' Supplement (Paper 67), grant defendant Rommel Builder's Motion for Joinder in Defendants' Motion for Summary Judgment, or Alternatively, Motion for Partial Summary Judgment (Paper 57),[7] grant in part and deny in part defendant LGGCI's Motion for Summary Judgment (Paper 63) and Supplement (Paper 65), and grant in part and deny in part plaintiffs' Second Motion for Summary Judgment (Paper 68). A formal order will be entered in conformity with this Memorandum Opinion.

---

5. Baldwin also testified that Building 13 had wood blocking as additional reinforcements in the bathrooms.

6. The Court notes that plaintiffs are not pressing liability against Rommel Builders for any violations beyond the actual buildings, and accordingly, Rommel Builders is not so liable.

7. While Rommel Builders' Motion for Joinder is granted, the underlying Motion for Summary Judgment as to which Rommel Builders seeks to join has been denied, and accordingly, the Court addressed and granted the alternative motion for partial summary judgment.