Mark **KUCHMAS**, et al., Plaintiffs,

v.

**TOWSON UNIVERSITY,**
et. al., Defendants.

**Civil Action No. RDB 06–3281.**

United States District Court,
D. Maryland.

May 15, 2008.

Andrew D. Levy, Sharon Krevor Weisbaum, Shelly Marie Martin, Brown Goldstein and Levy LLP, Baltimore, MD, for Plaintiffs.

Carolyn W. Skolnik, State of Maryland Office of the Attorney General, Eric Hemmendinger, Bruce S. Harrison, Eric Hemmendinger, Shawe and Rosenthal LLP, Baltimore, MD, Michael A. Anselmi, Towson University Counsel, Towson, MD, for Defendants.

### MEMORANDUM OPINION

RICHARD D. BENNETT, District Judge.

This action arises out of a five-count Complaint filed by Plaintiff Mark Kuchmas against Defendants Towson University, Collegiate Housing Foundation, Capstone Development Corporation, Capstone Properties Corporation, and Capstone On–Campus Management, LLC (collectively, "Defendants").[1] Plaintiffs allege that the Defendants violated the Fair Housing Act, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601, *et seq.* ("FHA"), Titles II and III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), and section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Pending before this Court is the Joint Motion for Partial Summary Judgment (Paper No. 51) filed by the five remaining Defendants. The parties' submissions have been reviewed and a hearing was held on May 13, 2008. For the reasons stated below, both motions are DENIED.[2]

---

1. The Complaint was originally brought against three additional parties: two construction companies—Krapfcandoit Company and Can–Do Construction Company, Inc.—as well as PGAL Architects, Inc. A default judgment was entered against Krapfcandoit Company and Can–Do Construction Company, Inc. on October 10, 2007 (Paper No. 43). This Court granted the Motion to Dismiss of PGAL Architects, Inc. on September 10, 2007, 2007 WL 2694186 (Paper No. 39). On May 13, 2008, this Court granted, in open court, the Plaintiff's Motion for Leave to File an Amended Complaint (Paper No. 62) adding four additional Plaintiffs: Rodney Horne, Lauren Kaplowitz, Christopher Bell, and Baltimore Neighborhoods, Inc. On the same day, this Court, also in open court, granted PGAL's Oral Motion to Dismiss the Amended Complaint for the reasons previously set forth in this Court's Amended Memorandum Opinion of September 11, 2007 (Paper No. 41).

2. Defendants also filed a Consent Motion to Dismiss Design and Construction Claims by Additional Plaintiffs (Paper No. 67) on May 5, 2008, essentially incorporating their argu-

*BACKGROUND & PROCEDURAL HISTORY*

The background of this case is summarized in this Court's Amended Memorandum Opinion of September 11, 2007 (Paper No. 41). In 1999, Collegiate Housing Foundation ("the Foundation") entered into a lease with the University System of Maryland on behalf of Towson University ("Towson" or "the University") pursuant to which the Foundation contracted to rent a piece of land on Towson's campus for a term of 40 years in order to construct and maintain a private housing facility, which was ultimately named Millennium Hall. (Am. Compl. ¶ 35.) The Foundation received state bond funding through the Maryland Economic Development Corporation, a state agency, to be able to construct Millennium Hall. (*Id.* ¶ 37.) Capstone Development Corporation ("Capstone Development") was hired to design and construct Millennium Hall in cooperation with the University and the Foundation. (*Id.* ¶ 38.) Capstone Development hired Krapfcandoit Co. and Can–Do Construction Co. to serve as general contractors and PGAL Architects, Inc. to provide architectural services. Millennium Hall was completed and first occupied in 2000 [3] and contains 108 two- and fourbedroom rental units. (*Id.*) Capstone Properties Corporation ("Capstone Properties") and Capstone On–Campus Management, LLC ("Capstone On–Campus") manage the facility. (*Id.* ¶¶ 12–13.)

Mark Kuchmas ("Kuchmas" or "Plaintiff") is a 28–year–old male who uses a wheelchair as a result of a degenerative neuromuscular condition known as Friedreich's Ataxia. (*Id.* ¶ 3.) Kuchmas applied for and was accepted at Towson University for the Spring semester in 2006. (Kuchmas Aff. ¶ 2.) The Towson Housing Office informed him that there were no handicap-accessible rooms available for the semester and referred him to Millennium Hall. (*Id.* ¶ 4.) The Manager of Millennium Hall, Frank Axell, told Kuchmas that there was one accessible male unit available for the Spring semester but that he would have to wait until the apartment was vacated before he could view it. (*Id.* ¶ 5.) Kuchmas relied on this information and signed a lease to reserve the apartment on December 1, 2005. (*Id.*)

Kuchmas toured the unit the first day possible, January 18, 2006, and found that portions of the apartment were not accessible. (*Id.* ¶ 6.) In particular, "portions of the apartment, specifically the bathroom and shower area, were not sufficiently configured to permit him to turn his wheelchair properly or to permit him to effectively use the shower." (Am. Compl. ¶ 47.) In addition, the configuration of the desk area, the height of the shower seat, and the difficulty opening doors raised accessibility concerns for Kuchmas. (*Id.* ¶ 48.) He contacted the maintenance supervisor at Millennium Hall, the Office of Disability Services at the University, and Capstone Properties but did not receive any assistance or accommodation. (*Id.* ¶¶ 48–50.)

There are four additional Plaintiffs named in the Amended Complaint. Rodney Horne and Lauren Kaplowitz are undergraduate students currently attending Towson University. (Am. Compl. ¶¶ 4–5.) They claim that the actions alleged in the

---

ments as to their Joint Motion for Partial Summary Judgment and preserving the issues as to the four Plaintiffs added in the Amended Complaint. Accordingly, for the same reasons stated in this Memorandum Opinion, the Motion to Dismiss Design and Construction Claims by Additional Plaintiffs is DENIED.

3. Although the exact date of completion is unclear, it is undisputed that Millennium Hall was both completed and first occupied in 2000. (*See* Am. Compl. ¶ 2; PGAL's Mem. Supp. Mot. Dismiss 2; Pl.'s Opp'n Mot. Dismiss 2.)

Complaint and the inability of disabled students to find housing to attend their school have undermined their educational experience. (Horne Decl. ¶ 6, Kaplowitz Decl. ¶ 7.) Christopher Bell is a Lecturer and Faculty Advisor in the English Department at Towson University and an affiliate faculty member in Cultural Studies and Lesbian, Gay, Bisexual and Transgender Studies. (Am. Compl. ¶ 6.) Mr. Bell claims that the actions alleged in the Complaint have undermined the diversity of the student body. (Bell Decl. ¶ 8.) Baltimore Neighborhoods, Inc. ("BNI") is a not-for-profit fair housing organization located in Baltimore, Maryland with goals that "include the elimination of unlawful, discriminatory housing practices that injure its members and others who seek to rent or buy housing units in Maryland." (Am. Compl. ¶ 8.) BNI, through member Joni Brown, claims that the educational experience at Towson University would substantially improve with the addition of more people with disabilities to the student body. (Brown Decl. ¶ 7.)

Plaintiff Mark Kuchmas filed a five-count Complaint in this Court on December 6, 2006, against Towson University, Collegiate Housing Foundation, Capstone Development Corporation, Capstone Properties Corporation, Capstone On–Campus Management, LLC, Krapfcandoit Company, Can–Do Construction Company, and PGAL Architects, Inc. asserting claims under the FHA, ADA, and Rehabilitation Act. On January 22, 2007, PGAL Architects filed a Motion to Dismiss (Paper No. 20) and on March 28, 2007, Towson University filed a Partial Motion to Dismiss as to Counts I and II only (Paper No. 34). Both motions were granted by this Court on September 10, 2007. (Paper No. 39.) The Memorandum Opinion was amended on September 11, 2007 to correct a slight misstatement of fact. (Paper No. 41.)

On October 31, 2007, Defendants Towson University, Collegiate Housing Foundation, Capstone Development, Capstone Properties, and Capstone On–Campus filed a Joint Motion for Partial Summary Judgment (Paper No. 51) pursuant to Rule 56 of the Federal Rules of Civil Procedure, alleging that the FHA, ADA, and Rehabilitation Act "design and construct" claims in Counts I, III, IV, and V are time-barred.

On April 8, 2008, Kuchmas filed a Motion for Leave to File Amended Complaint (Paper No. 62) seeking to add four additional Plaintiffs—Rodney Horne, Lauren Kaplowitz, Christopher Bell, and Baltimore Neighborhoods, Inc.—which this Court granted on May 13, 2008 (Paper No. 73). Plaintiffs assert five claims against the Defendants in the Amended Complaint (Paper No. 74).[4] In Count I, all Plaintiffs allege that the Defendants violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(f)(3)(C), and 24 C.F.R. § 100.200, *et seq.*, by failing to "design and construct Millennium Hall so that all covered units contain all required features of accessible design. . . ." (Am. Compl. ¶ 56.) In Count II, Plaintiff Kuchmas alleges that the Defendants' "failure to make reasonable accommodations to afford Plaintiff Kuchmas an equal opportunity to use and enjoy a Millennium Hall apartment unit like other Towson students" violated the FHA, 42 U.S.C. § 3604(f)(3)(B). (*Id.* ¶ 58.) In Count III, Plaintiffs Kuchmas and BNI assert that all of the Defendants, except Towson University, failed "to design and construct the public accommodations at Millennium Hall in a manner readily accessible to and usable by individuals with disabilities" in violation of Title III of the

---

4. Counts I and II are brought against all named Defendants. Count III is asserted against all Defendants except Towson University, while Counts IV and V are asserted solely against the University.

Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12183 and 28 C.F.R. § 36.401. (*Id.* ¶ 60.) In Count IV, Plaintiffs Kuchmas and BNI claim that Towson University's failure to provide adequate accessible housing to disabled students in general and specifically to accommodate their needs violates Title II of the ADA and the ADA's Standards for Accessible Design, 28 C.F.R. Part 36, Appendix A. (*Id.* ¶¶ 62–65.) Finally, in Count V, Plaintiffs Kuchmas and BNI allege that Towson University failed to provide accessible housing in violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. (*Id.* ¶ 67–68.)

On May 5, 2008, Defendants filed a Consent Motion to Dismiss Design and Construction Claims as to the Additional Defendants (Paper No. 67), essentially reiterating their arguments in the Joint Motion for Partial Summary Judgment. A hearing was held on May 13, 2008. At the hearing, this Court granted the Motion for Leave to File Amended Complaint, at which time counsel for PGAL Architects renewed its Motion to Dismiss as to the Amended Complaint. This Court granted that oral motion for the same reasons previously stated in its Memorandum Opinion of September 11, 2007.[5] The issue of standing was briefed in the Defendants' Joint Motion for Partial Summary Judgment as to Plaintiff Mark Kuchmas, but the parties requested additional time to brief the issue as to the additional Plaintiffs. Accordingly, this Court reserved ruling on the issue of standing until reviewing the additional submissions. Thus, the only issue to be addressed presently is whether the design and construction claims are time-barred.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material* fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c) (emphasis added). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court explained that only "facts that might affect the outcome of the suit under the governing law" are *material*. *Id.* at 248, 106 S.Ct. 2505. Moreover, a dispute over a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court further explained that, in considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence supporting a claimed factual dispute exists to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249, 106 S.Ct. 2505. In that context, a court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

A genuine issue of material fact may exist if the evidence presented to the court is sufficient to indicate the existence of a factual dispute that could be resolved in favor of the nonmoving party at trial. *Rachel–Smith v. FTData, Inc.*, 247 F.Supp.2d 734, 742 (D.Md.2003) (citing *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505). Moreover, any inferences drawn from disputed evi-

---

**5.** On May 14, 2008, Towson University renewed its Motion to Dismiss Counts I and II. For the reasons previously stated in the September 11, 2007 Memorandum Opinion, this Court granted Towson's Motion to Dismiss by Letter Order dated May 14, 2008.

dence must be accorded to the non-moving party. *See Matsushita,* 475 U.S. at 587–88, 106 S.Ct. 1348; *E.E.O.C. v. Navy Federal Credit Union,* 424 F.3d 397, 405 (4th Cir.2005).

## DISCUSSION

Defendants Towson University, Collegiate Housing Foundation, Capstone Development Corp., Capstone Properties Corp., and Capstone On–Campus Management, LLC have moved for partial summary judgment as to the design and construction claims contained in Counts I, III, IV, and V. The sole issue before this Court at this time is whether these claims are barred by the applicable statutes of limitations.

## I. Count I: Fair Housing Act[6]

The Fair Housing Act makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap ...." 42 U.S.C. § 3604(f)(1). Discrimination includes:

A failure to design and construct ... dwellings in such a manner that—

(i) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;

(ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and

(iii) all premises within such dwellings contain the following features of adaptive design:

(I) an accessible route into and through the dwelling;

(II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;

(III) reinforcements in bathroom walls to allow later installation of grab bars; and

(IV) usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

42 U.S.C. § 3604(f)(3).

The FHA expressly has a two-year statute of limitations.[7] *See* 42 U.S.C. § 3613(a)(1)(A) ("An aggrieved person may commence a civil action ... not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice...."). What is less clear is when the statute of limitations begins to run, that is, what constitutes the "occurrence or the termination of an alleged discriminatory housing practice." In *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 381, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), the Supreme Court of the United States held that "where a plaintiff, pursuant to the Fair Housing Act, challenges not just one

---

**6.** As this Court previously granted Towson University's Motion to Dismiss Count I, it is no longer a Defendant as to Count I.

**7.** Neither the Americans with Disabilities Act nor the Rehabilitation Act, discussed *infra,* sets forth a particular statute of limitations, but this Court has previously held that Maryland's general three-year statute of limitations was appropriate under both statutes. *See Speciner v. NationsBank, N.A.,* 215 F.Supp.2d 622, 634 (D.Md.2002) (ADA); *Schalk v. Associated Anesthesiology Practice,* 316 F.Supp.2d 244, 251 (D.Md.2004) (Rehabilitation Act). Defendants contend that the most analogous statute of limitations is in fact two years, as set forth in the portion of the Maryland Annotated Code relating to claims for discriminatory housing practices. *See* Md.Code Ann. art. 49B, § 33 (2003). This Court has previously held that "there is no evidence that Maryland intended to enact Art. 49B as a state 'counterpart' to the federal Rehabilitation Act or the [ADA]." *Kohler v. Shenasky,* 914 F.Supp. 1206, 1211 (D.Md.1995). This Court need not address the applicability of section 33 of Article 49B as urged by the Defendants as this Court's ruling is the same applying either a two- or three-year period.

incident of conduct violative of the Act, but an unlawful practice that continues ..., the complaint is timely when it is filed with [the statute of limitations period after] the last asserted occurrence of. that practice."

In its September 11, 2007 Memorandum Opinion, this Court ruled that the statute of limitations began running on the design and construction FHA claim against PGAL Architects as soon as the building's construction was completed and first occupied in 2000. This Court relied on *Moseke v. Miller & Smith, Inc.,* 202 F.Supp.2d 492 (E.D.Va.2002), in which the United States District Court for the Eastern District of Virginia held that "the existence of a FHA noncompliant building is not a continuing violation of the FHA" and that, therefore, claims brought against developers, architectural firms, and community associations more than two years after the completion of the building's construction were time-barred. *Id.* at 510. The *Moseke* court reasoned that the focus of the analysis "must remain on Defendants' acts (*i.e.,* the design and construction of non-compliant buildings), rather than the continuing effects (*i.e.,* the continuing inaccessible features) that those acts caused." *Id.* at 506. In the Memorandum Opinion, this Court also distinguished its prior opinion in *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.,* 40 F.Supp.2d 700, 710 (D.Md.1999), which held that "the limitations period does not begin to run until the happening of the 'last asserted occurrence' of discrimination," on the grounds that the defendants were owners and managers rather than an architect.

■ Defendants argue that, as this Court ruled in its September 11, 2007 Memorandum Opinion, the statute of limitations began running on any design and construction claims against them as soon as the building's construction was completed and first occupied in 2000. The Defendants' position is essentially that there is no legal distinction between them and PGAL Architects. Specifically, they argue that drawing a distinction between architects/builders and owners/managers would make those with least control over the design of the building—the latter group—liable for the actions of the former group.

Plaintiffs argue that the relevant provision of the FHA, 42 U.S.C. § 3604, is ambiguous. They note that the statute refers to two different events in time—the design and construction process and the sale or rental of a unit to an individual. Thus, they argue, the statute of limitations in a design and construction claim under section 3604(f)(3)(C) may be interpreted to begin in several ways: 1) the completion of construction; 2) the time an individual encounters and is injured by the noncompliant structure; and 3) when a potential defendant either ceases to have control over accessibility or brings the housing into compliance with the law. Plaintiffs contend that the third interpretation is consistent with the history and purpose of the FHA as well as this Court's previous Memorandum Opinion dismissing the claim against PGAL Architects. Specifically, this interpretation would establish an ongoing duty on the part of the entities in control of a building to make corrections to bring it into compliance with the FHA while limiting the liability of entities whose involvement and control over the accessibility of a building ends once the building is complete.

Plaintiffs' interpretation of the FHA is consistent with *Moseke,* the case this Court relied on in its September 11, 2007 Memorandum Opinion, and supports drawing a distinction between the present Defendants and PGAL Architects. Unlike PGAL Architects, which took no action after it designed Millennium Hall sometime in 1999–2000, the current Defendants—Collegiate Housing Foundation,

Capstone Development Corp., Capstone Properties Corp., and Capstone On–Campus Management, LLC—continue to be involved in the leasing of noncompliant apartments.[8] Thus, even if the true cause of the noncompliance was mere neglect or oversight during the design and construction phases, the remaining Defendants continue to benefit from that oversight by renting inaccessible units while PGAL Architects ceased all involvement with the building in 2000.

Plaintiffs' interpretation of the FHA is also consistent with this Court's previous opinion in *Baltimore Neighborhoods, Inc.*, which held that the last asserted occurrence of discrimination that triggered the statute of limitations was the sale of the last unit, that is when the owners and managers ceased to have control over the individual units. 40 F.Supp.2d at 710. Under that reasoning, the rental apartments in Millennium Hall remain under the control of the Defendants, so each new rental of a noncompliant unit triggers the statute of limitations.

The United States Court of Appeals for the Fourth Circuit has not ruled on the question of the statute of limitations as applied to design and construction claims under either the FHA, the ADA, or the Rehabilitation Act. In *Fair Housing Council, Inc. v. Village of Olde St. Andrews, Inc.*, 210 Fed.Appx. 469, 481 (6th Cir.2006), the United States Court of Appeals for the Sixth Circuit held that, "in cases where the plaintiff alleges that the owner of a multifamily housing development failed to design and construct the development so as to make it accessible to disabled individuals, the limitations period will depend on the specific circumstances of each case." The Supreme Court recently declined to hear that case on appeal. *See* — U.S. ——, 128 S.Ct. 880, 169 L.Ed.2d 785 (2008). In contrast, in *Garcia v. Brockway*, 526 F.3d 456, 462–64 (9th Cir.2008) (en banc), the United States Court of Appeals for the Ninth Circuit declined to apply the continuing violation doctrine and held that, "[a]lthough the ill effects of a failure to properly design and construct may continue to be felt decades after construction is complete, failing to design and construct is a single instance of unlawful conduct."

In conclusion, this Court holds that Defendants Collegiate Housing Foundation, Capstone Development Corp., Capstone Properties Corp., and Capstone On–Campus Management, LLC, had an ongoing duty in light of their control of Millennium Hall. Accordingly, the statute of limitations with respect to a design and construction claim began when Plaintiff Mark Kuchmas leased a unit in Millennium Hall. Accordingly, Defendants' Joint Motion for Partial Summary Judgment with respect to the design and construction claim as set forth in Count I is DENIED.

## II. Counts III and IV: Americans with Disabilities Act[9]

Count III of the Complaint purports to state a claim under Title III of the ADA against all Defendants except Towson University. Count IV claims violations of Title II of the ADA against Towson University alone. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full

---

8. At the hearing held May 13, 2008, counsel for the Defendants proffered the degrees of involvement by each of the Defendants in the development, ownership, and management of Millennium Hall. However, the record presently before this Court is not sufficient to differentiate between the various "Capstone" entities.

9. Count III is brought against all Defendants except Towson University, while Count IV is against Towson University alone.

and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who *owns, leases (or leases to), or operates* a place of public accommodation." 42 U.S.C. § 12182(a) (emphasis added). Discrimination includes a failure to design and construct new facilities so that they "are readily accessible to and usable by individuals with disabilities." *Id.* § 12183(a)(1). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* § 12132. The design specifications for buildings to comply with Title II are set forth in 28 C.F.R. Part 36, Appendix A, section 4.

Defendants have moved for summary judgment as to the design and construction claims in both Counts III and IV on the same grounds as Count I. Plaintiffs likewise contend that their reasoning as to the FHA supports a finding that the ADA claims are not time-barred. Defendants cite *Speciner v. NationsBank, N.A.*, 215 F.Supp.2d 622 (D.Md.2002), for the proposition that the ADA claims are time-barred. In that case, this Court held that a claim arising out of one-time alterations to a building constructed in the 1920s was time-barred. *Id.* at 634. However, it is important to note that there were additional ADA claims based on the *continued* inaccessibility of entrances to the building. As to those claims, this Court held that "because Plaintiffs' claims regarding the ... entrances are based upon alleged continuing violations, they are not barred by limitations." *Id.* (citing *Deck v. City of Toledo,* 56 F.Supp.2d 886, 892–93 (N.D.Ohio 1999)). As in *Speciner,* portions of Millennium Hall continue to be inaccessible to students in wheelchairs.

■ There is little case law addressing the statute of limitations issue as to the ADA. Most litigation has focused on claims brought pursuant to the FHA. However, this Court finds the same reasoning discussed *supra* in Part I applies to these claims as well, with the exception that a distinction need not be made between these Defendants and PGAL Architects. This Court concluded in the September 11, 2007 Memorandum Opinion that Congress did not intend to hold architects liable under Title III of the ADA and, therefore, did not address the statute of limitations issue. (*See* Sept. 11, 2007 Mem. Op. 14–15.) This Court holds that building owners and managers have a continued responsibility under the ADA to provide accessible housing to individuals with disabilities. The period set forth in the statute of limitations as to those in continuing control of the subject building commences at the rental of an inaccessible unit. Accordingly, Defendants' Joint Motion for Partial Summary Judgment is DENIED as to Counts III and IV.

## III. Count V—Rehabilitation Act

Finally, Towson University has moved for summary judgment as to the design and construction claim in Count V of the Complaint for the same reasons discussed *supra.* Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a). As with the ADA, the statute of limitations issue has not been addressed in the context of the Rehabilitation Act nearly as often as the FHA, and all parties contend that this Court should adopt the same reasoning as applied to the FHA.

In support, Towson cites *Hovsons, Inc. v. Township of Brick,* 89 F.3d 1096 (3d Cir.1996), in which the U.S. Court of Appeals for the Third Circuit held that the Rehabilitation Act and the FHA adopt the same standards with respect to reasonable accommodations claims. While design and construction claims are not addressed, the court did note that the legislative history of the FHA indicated that the statute was modeled after the Rehabilitation Act. *Id.* at 1101.

█ This Court finds the same reasoning discussed *supra* in Part I applies to the Rehabilitation Act claim as well, with the exception that a distinction need not be made between Defendants as Count V is solely against Towson University. Thus, this Court holds that a public university has a continued responsibility under the ADA to provide accessible housing to individuals with disabilities and that the statute of limitations began to run not at the completion of construction of Millennium Hall but rather at the rental of an inaccessible unit. Accordingly, Defendants' Joint Motion for Partial Summary Judgment is DENIED as to Count V.

## CONCLUSION

In conclusion, for the reasons state above, Defendants' Joint Motion for Partial Summary Judgment is DENIED. In addition, Defendants' Consent Motion to Dismiss Design and Construction Claims as to the Additional Defendants is DENIED. A separate Order follows.