2000 ND 162

**Howard SNORTLAND, Plaintiff and Appellant,**

v.

**STATE of North Dakota acting through its agencies, the North Dakota Department of Public Instruction and North Dakota Teachers Fund for Retirement, Defendant and Appellee.**

No. 20000025.

Supreme Court of North Dakota.

Aug. 23, 2000.

James J. Coles, Coles Law Firm, PC, Bismarck, for plaintiff and appellant.

. Douglas B. Anderson, Assistant Attorney General, Bismarck, for defendant and appellee.

KAPSNER, Justice.

[¶ 1] Howard Snortland appealed from a summary judgment dismissing his action against the State for breach of an employment contract. We conclude Snortland's

action is barred as a matter of law by the six-year statute of limitations, and we affirm.

## I

[¶ 2] The underlying facts are undisputed. Snortland served as superintendent of the Department of Public Instruction ("Department") from January 1, 1977, through December 31, 1980. As superintendent, Snortland was statutorily required to serve as a member of the Board of Trustees ("Board") of the Teachers' Fund for Retirement ("Fund"). *See* N.D.C.C. § 15–39.1–05 (1980). During his term of office, Snortland received payments designated by the Legislature as "annual salary" in the amount of $22,500 per year. As an elected state official, Snortland also received payments designated by the Legislature as "state officer's expense payments," commonly referred to as "unvouchered expense payments," in amounts established by legislative appropriations.

[¶ 3] Snortland was qualified to participate in the Fund because he was the Department's superintendent. Snortland was eligible to receive retirement benefits from the Fund using a formula based on his "monthly salary," defined as "one-twelfth of the annual salary paid ...." N.D.C.C. § 15–39.1–10(2)(1980). Assessments representing Snortland's contributions to the Fund were deducted from his monthly salary during his term, and were paid quarterly by the Department to the state treasurer along with the Department's contribution. N.D.C.C. § 15–39.1–09 (1980). While Snortland served as superintendent, the Department reported his salary to the Fund as the amount designated as his annual salary. Snortland's W–2 forms for tax years 1977 through 1980 showed only those payments designated as annual salary were reported to the Internal Revenue Service ("IRS"). Snortland, however, reported as taxable income for state and federal income tax purposes his annual salary and the unvouchered expense payments he received.

[¶ 4] Snortland's earnings statements showed deductions for retirement were withheld from his monthly salary. The Fund's records showed no additional assessments or contributions were made to the Fund based on Snortland's unvouchered expense payments.

[¶ 5] The Board met in September 1980 and discussed whether unvouchered expense payments received by a school superintendent in addition to his salary reported for income tax purposes could be included in salary for retirement benefit calculations. The Board members and executive secretary agreed only salary reported for IRS purposes should be used as income for Fund purposes, but decided to investigate further before taking final action. The executive secretary requested a legal opinion from an attorney, who responded by letter that, based on the North Dakota Supreme Court's decision in *Walker v. Omdahl,* 242 N.W.2d 649 (N.D.1976), "unvouchered expenses would not be subject to assessment for the purposes of the [Fund]." In December 1980, the Board adopted the attorney's recommendation, but Snortland did not attend the meeting.

[¶ 6] Snortland's 1980 reelection bid for superintendent of the Department was unsuccessful, and he decided to retire when his term expired on December 31, 1980. Snortland submitted his application for retirement benefits to the Fund in January 1981, and the Fund calculated his retirement benefits based on his annual salary alone. The Fund sent Snortland his first retirement check in February 1981 and correspondence informing him of the assessments and contributions that had been credited to his account.

[¶ 7] Snortland believed, even before taking office as superintendent of the Department, that unvouchered expense payments made to state-elected officials constituted salary. Before his retirement, a Department employee told Snortland his retirement benefits would be based on his

statutory salary and would not include unvouchered expenses. After Snortland's retirement in 1981, the Board's executive secretary also told him his retirement benefits would be based on his annual salary alone. Snortland admitted it remained his opinion, after discussing the issue with the Department employee and the Board's executive secretary, that he was not "treated fairly" by being paid retirement benefits based solely on his annual salary. Snortland also said he "griped about it" to other persons during the 1980s.

[¶ 8] After discussing the matter in January 1998 with a person described by Snortland as a pension and benefits expert, Snortland brought this breach of contract action in August 1998 against the State through the Department and the Fund. Snortland alleged, in addition to benefits he has received since his retirement based on payments to him designated as annual salary, he should also have been entitled to receive retirement benefits based on his unvouchered expense payments. Snortland contended the Department breached his employment contract by failing "to properly and accurately report [his] compensation to the appropriate state agency responsible for determining and paying the retirement benefits," thereby "depriving [him] of his legal and proper retirement benefits...." The State raised the affirmative defense that Snortland's action was barred by either the three-year statute of limitations under N.D.C.C. § 28–01–22.1, or the six-year statute of limitations under N.D.C.C. § 28–01–16.

[¶ 9] The trial court granted the State's motion for summary judgment, concluding as a matter of law that Snortland's action was barred by the six-year statute of limitations under N.D.C.C. § 28–01–16. Snortland appealed.

## II

[¶ 10] Summary judgment under N.D.R.Civ.P. 56 is a procedural device for properly disposing of a lawsuit without trial if, after viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact or conflicting inferences which can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *Dan Nelson Const., Inc. v. Nodland & Dickson,* 2000 ND 61, ¶ 13, 608 N.W.2d 267.

[¶ 11] The statute of limitations for a breach of contract action is six years after the claim for relief has accrued. N.D.C.C. § 28–01–16(1). The discovery rule, which determines when the claim accrues for purposes of computing limitations, applies to a breach of contract claim. *Wells v. First American Bank West,* 1999 ND 170, ¶¶ 10–11, 598 N.W.2d 834. The discovery rule postpones a claim's accrual until the plaintiff knew, or with the exercise of reasonable diligence should have known, of the wrongful act and its resulting injury. *Id.* at ¶ 10. An objective standard is used for the knowledge requirement of the discovery rule, which focuses upon whether the plaintiff is aware of facts that would place a reasonable person on notice a potential claim exists, without regard to the plaintiff's subjective beliefs. *BASF Corp. v. Symington,* 512 N.W.2d 692, 695 (N.D.1994). Although entry of summary judgment on the issue of when a statute of limitations begins to run is ordinarily inappropriate, if uncontroverted facts exist that demonstrate the time when a reasonable person would have been placed on notice, a court may resolve the question as a matter of law. *Dan Nelson Const., Inc.,* 2000 ND 61, ¶ 18, 608 N.W.2d 267. In these circumstances, the issue becomes one of law because the evidence is such that reasonable minds could draw but one conclusion. *See Schanilec v. Grand Forks Clinic, Ltd.,* 1999 ND 165, ¶ 20, 599 N.W.2d 253.

[¶ 12] The State argues, and the trial court ruled as a matter of law, the statute of limitations began to run when Snortland received his first retirement check in 1981. We agree.

[¶ 13] Snortland said he believed, even before taking office as superintendent of the Department in 1977, the unvouchered expense payments made to state-elected officials constituted salary. Snortland knew, or certainly should have known from his W–2 forms, only those payments designated by the Legislature as annual salary had been reported to the IRS. Snortland also knew from his earnings statements the Fund assessments were being made from his salary payments, but were not being made from the unvouchered expense payments. A Department employee informed Snortland before his retirement, and the Board's executive secretary informed him shortly afterward, that his retirement benefits would be based on his statutory salary and would not be based on any amounts paid as unvouchered expenses. When Snortland received his first retirement check in 1981, confirming to him that his retirement benefits were not based on the additional unvouchered expense payments, Snortland knew, or a reasonable person in his position would have known, of his potential claim for additional retirement benefits. Indeed, Snortland expressed his feelings of unfair treatment by the Fund and continued to "gripe about it" to others during the 1980s.

[¶ 14] Snortland argues the State is equitably estopped from relying on the statute of limitations because the Board's executive secretary breached a fiduciary duty owed to him as a beneficiary of the Fund. In an affidavit, Snortland claimed:

It is my feeling that I would have taken action on this matter years ago had I received any information at all from the board of trustees or their representatives other than the assertion by [the executive secretary] that this matter had been conclusively determined by a decision of the North Dakota Supreme Court. At no time did [the executive secretary] or any other representative or member of the board of trustees or anyone else representing the State of North Dakota state to me that I should have this matter reviewed by my own experts or legal counsel or that there were any aspects of the issue regarding my retirement benefits which had not been conclusively determined by the highest Court in the state. Now that discovery has proceeded in this action it now appears as if the information given to me as absolute fact and stated as the law in the State of North Dakota was merely the opinion of one attorney, ... who was in fact working for the benefit of [the Fund] and who provided them with an opinion that was in their benefit and adverse to my interests without any disclosure as to any potential conflict of interest on his part as the attorney for [the Fund].

[¶ 15] Successfully claiming "estoppel against a government entity is not an easy accomplishment." *Dan Nelson Const., Inc.*, at ¶ 30. Equitable estoppel may preclude application of a statute of limitations as a defense by one whose actions mislead another, thereby inducing that person to not file a timely claim, but the plaintiff's reliance on the defendant's conduct must be reasonable, and there must be some form of affirmative deception by the defendant. *Narum v. Faxx Foods, Inc.*, 1999 ND 45, ¶ 24, 590 N.W.2d 454. The existence of a fiduciary relationship may give rise to a duty to disclose, *see Rolin Mfg., Inc. v. Mosbrucker*, 544 N.W.2d 132, 136 (N.D.1996); *Krueger v. St. Joseph's Hospital*, 305 N.W.2d 18, 25 (N.D.1981), relieving the injured party of the burden of showing an affirmative deception to postpone the running of a statute of limitations. *See Malachowski v. Bank One, Indianapolis*, 590 N.E.2d 559, 563 (Ind.1992); *Lumber Village, Inc. v. Siegler*, 135 Mich.App. 685, 355 N.W.2d 654, 658 (1984). However, we reject Snortland's contention a fiduciary relationship arose under these undisputed facts.

[¶ 16] A fiduciary relationship "generally arises when there is an unequal relationship between the parties." *L.C. v. R.P.*, 1997 ND 96, ¶ 12, 563 N.W.2d 799.

The "party reposing the confidence must be in a position of inequality, dependence, weakness, or lack of knowledge." *Union State Bank v. Woell*, 434 N.W.2d 712, 721 (N.D.1989). In this case, the members of the Board were charged with the responsibility of managing the Fund, *see* N.D.C.C. § 15–39.1–05 (1980), and were therefore responsible for formulating its policies. The Board was empowered to employ an executive secretary "who shall perform such duties as the board may prescribe." N.D.C.C. § 15–39.1–06 (1980). As a member of the Board and as the executive secretary's superior, Snortland was not in an unequal or dependent relationship with the executive secretary concerning Board policies, including the Board's treatment of unvouchered expense payments for Fund purposes. Snortland's absence from the meeting where the Board accepted the attorney's recommendation is no justification for implying a fiduciary relationship. It was Snortland's duty to attend the meeting, and he certainly was not destitute of the means of acquiring information about the meeting. *See Wehner v. Schroeder*, 354 N.W.2d 674, 677 (N.D.1984). Snortland had access to as much information as did the Board's executive secretary.

[¶ 17] There was no breach of any fiduciary relationship, and there is no hint in the record of any deception designed to induce Snortland to not file a claim within the statute of limitations. We conclude the State is not equitably estopped from relying on the statute of limitations.

[¶ 18] Reasonable minds could draw but one conclusion in this case. We conclude as a matter of law Snortland knew, or reasonably should have known, he had a potential claim against the Fund when he received his first retirement check in February 1981. Consequently, the trial court correctly ruled Snortland's claim is barred by the six-year statute of limitations under N.D.C.C. § 28–01–16(1).

### III

[¶ 19] The summary judgment is affirmed.

[¶ 20] DALE V. SANDSTROM, WILLIAM A. NEUMANN, and MARY MUEHLEN MARING, JJ., and GORDON O. HOBERG, S.J., concur.

[¶ 21] The Honorable GORDON O. HOBERG, S.J., sitting in place of VANDE WALLE, C.J., disqualified.