2003 ND 117

**Ed TARNAVSKY, Plaintiff and Appellant,**

v.

**McKENZIE COUNTY GRAZING ASSOCIATION, Keith Winter, Jim Kuykendall, Dale Greenwood, Kelly Indergard, Frederick K. James, Ron Whited, Alvin Nelson, Monty Carson, Lynn Dewhirst, Jason Leiseth, Jim Gudmunson, Bob Cross, Paul Wisness, Doug Rolfsrud, David Nelson, and Merle Jost, Defendants and Appellees.**

No. 20020311.

Supreme Court of North Dakota.

July 16, 2003.

Rehearing Denied Aug. 20, 2003.

Charles L. Chapman, Chapman and Chapman, Bismarck, N.D., for plaintiff and appellant.

Dennis Edward Johnson, Johnson & Sundeen, Watford City, N.D., for defendants and appellees.

KAPSNER, Justice.

[¶1] Ed Tarnavsky appeals from a summary judgment dismissing his action against the McKenzie County Grazing Association ("MCGA"). We hold Ed Tarnavsky's action is barred by the statute of limitations, and we affirm.

I

[¶2] The MCGA is a cooperative grazing association under N.D.C.C. ch. 36–08, which began operations in 1937 to lease grasslands from the federal government and to issue grazing permits to its members. During the 1930s, the federal government purchased land in McKenzie County for federal grasslands, and conducted a survey in 1936 to determine prior grazing use of the grasslands. The 1936 survey and original base property were used to determine grazing preferences, which are the right to graze a specified number of cattle for a specified number of months on the federal grasslands. The MCGA operations manual defines "base property" as "designated property on which a grazing preference was established as original members came into the MCGA. Base property is identified in the MCGA records on the original applications and consisted of both deeded and leased acres." A 1938 grazing agreement between the MCGA and the United States required the MCGA to classify grazing preferences as either a class A preference for applicants with a priority of use, or a class B preference for applicants without a priority of use.

[¶3] Ed Tarnavsky is a member of the MCGA. He is the successor in interest to base property originally owned by Andrew Tarnavsky and by Thomas Tarnavsky, who were both members of the MCGA and owned base property with a priority of use under the 1936 survey. In 1938, Andrew Tarnavsky, Ed Tarnavsky's uncle, had a grazing preference of 100 animal units based upon his priority of use and ownership of base property. Thomas Tarnavsky, Ed Tarnavsky's father, had a grazing preference of 250 animal units based upon his priority of use and ownership of base property. In the 1940s, the MCGA approved Andrew Tarnavsky's requests to adjust his grazing preference to 40 animal units. In 1945, upon Thomas Tarnavsky's motion, the MCGA accepted Kukla for membership and granted him a 25 animal unit grazing preference, which Thomas Tarnavsky agreed to release from his

grazing preference. In 1948, the MCGA approved Freed for membership and granted him a 25 animal unit grazing preference, which Thomas Tarnavsky agreed to release from his grazing preference. The record does not reflect that Thomas or Andrew Tarnavsky transferred any of their base property when they released those grazing preferences, nor does the record reflect that Freed or Kukla owned or leased base property.

[¶ 4] In 1966, the MCGA adopted a policy that "[a]ll existing preferences shown on the records of the Association as of June 9, 1966, shall be recognized subject to the rules and regulations of the Association." In the early 1990s, the MCGA addressed issues about base property and grazing preferences. During this process, the term "phantom rights" was coined to refer to grazing preferences not attached to original base property. In 1993, the MCGA executive board discussed a report which referred to phantom rights, and voted to accept the report after changing the reference to phantom rights to "the difference between the original rights and to-day[']s rights."

[¶ 5] Ed Tarnavsky claims grazing preferences are inseparably tied to original base property, and the MCGA, in releasing the grazing preferences from his predecessors' original base property, exceeded its authority under its charter and North Dakota law. Ed Tarnavsky sued the MCGA in 1998, alleging that as an owner of original base property, he owned land which, under the 1936 survey, had, or should have had, permanent grazing rights. He alleged the MCGA failed to restore his previously released grazing rights.

[¶ 6] The trial court granted the MCGA summary judgment, concluding, in part, the transfers of grazing preferences by Ed Tarnavsky's predecessors in interest were not temporary, the transfers were not invalid because his predecessors did not also transfer base property, and any claims regarding the releases of grazing preferences by his predecessors were barred by any applicable statute of limitations. The court decided the statute of limitations began to run when Ed Tarnavsky knew, or should have known, that Thomas and Andrew Tarnavsky had relinquished a portion of their grazing preferences, not when Ed Tarnavsky " 'knew of the real nature of the problems with the allocations of the preferences.' " The court ruled "[w]hether that date is (1) when Thomas and Andrew [Tarnavsky] relinquished portions of their grazing preferences without any conditions or duration, waiving their right or [Ed Tarnavsky's] right to sue for their return, (2) when the [original base] property transferred to [Ed Tarnavsky], or (3) in 1966 when the MCGA took its action regarding grazing preferences, the applicable statue of limitations has long since run." Ed Tarnavsky appealed.

## II

[¶ 7] We consider this appeal in the posture of summary judgment, which is a procedural device for promptly disposing of a lawsuit without a trial if, after viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact or inferences which can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *Snortland v. State ex rel. Dep't of Pub. Instruction*, 2000 ND 162, ¶ 10, 615 N.W.2d 574.

[¶ 8] The dispositive issue in this appeal is whether the statute of limitations bars Ed Tarnavsky's 1998 action against the MCGA. He argues the statute of limitations does not bar his action, because the MCGA was continuing to make adjust-

ments and changes to its allocation of grazing preferences and base property in the 1990s and was addressing the phantom rights issue in 1993. He argues he was not aware of the "depth" of the issue of unqualified ranchers holding grazing preferences until 1993, and claims, under the discovery rule, he was not aware of facts which would place a reasonable person on notice that a potential claim existed until 1993. He also argues the MCGA's yearly issuance of grazing permits based upon the erroneous allocation of grazing preferences is a continuing wrong which extends the statute of limitations. The MCGA argues Ed Tarnavsky brought this action in 1998, more than fifty years after his predecessors in interest released their grazing preferences, and more than thirty years after the grazing preferences were frozen in 1966. The MCGA argues Ed Tarnavsky's action is either a contract claim barred by the six-year statute of limitations in N.D.C.C. § 28–01–16, or a claim subject to the ten-year statute of limitations in N.D.C.C. § 28–01–22. The MCGA also argues Ed Tarnavsky's reliance on the discovery rule and the continuing wrong concept is misplaced.

[¶ 9] Statutes of limitation are designed to prevent plaintiffs from sleeping on their legal rights and bringing stale claims to the detriment of defendants. *See Burr v. Trinity Med. Ctr.*, 492 N.W.2d 904, 910–11 (N.D.1992). Statutes of limitations are a legal bar to a cause of action and begin to run when the underlying cause of action accrues. *Abel v. Allen*, 2002 ND 147, ¶ 10, 651 N.W.2d 635. The determination of when a plaintiff's cause of action has accrued is generally a question of fact, but if there is no dispute about the relevant facts, the determination is for the court. *Id.* at ¶ 11. A cause of action accrues when the right to commence the action comes into existence and can be brought in a court of law without being dismissed for failure to state a claim. *Id.* at ¶ 12. We have recognized statutes of limitation ordinarily began to run from the commission of the wrongful act giving rise to the cause of action, *see BASF Corp. v. Symington*, 512 N.W.2d 692, 695 (N.D. 1994), and " '[a]n injury usually arises contemporaneously with the wrongful act causing the injury.' " *Huber v. Oliver County*, 529 N.W.2d 179, 182 (N.D.1995) (quoting *Erickson v. Scotsman, Inc.*, 456 N.W.2d 535, 537 (N.D.1990)).

[¶ 10] Here, Ed Tarnavsky's complaint alleges a wrongdoing that occurred when his predecessors in interest released their grazing preferences in the 1940s, and no later than 1966 when the MCGA eliminated the distinction between class A and class B preferences. Ed Tarnavsky's predecessors in interest participated in the releases of their respective grazing preferences in the 1940s and thereafter received grazing permits based on those reductions in grazing preferences. Their right, if one existed, to bring an action came into existence when they released the grazing preferences in the 1940s and no later than 1966 when the MCGA eliminated the distinction between class A and class B preferences, and Ed Tarnavsky is not entitled to any greater rights under the statute of limitations than his predecessors in interest.

[¶ 11] Moreover, the discovery rule does not save Ed Tarnavsky's claims from the statute of limitations. The discovery rule postpones the accrual of a claim until the plaintiff knew, or with the exercise of reasonable diligence should have known, of the wrongful act and its resulting injury. *Snortland*, 2000 ND 162, ¶ 11, 615 N.W.2d 574. An objective standard is used for determining knowledge under the discovery rule, and that standard focuses upon whether the plaintiff is aware of facts that would place a reason-

able person on notice a potential claim exists, without regard to the plaintiff's subjective beliefs. *Id.* Summary judgment is appropriate if the uncontroverted facts establish that a reasonable person would have been placed on notice of a potential claim. *Id.*

 [¶ 12] Ed Tarnavsky's statement that he was not aware of the "depth" of this issue until 1993 belies any contention that he had no notice of a potential claim before 1993. Ed Tarnavsky and his predecessors in interest have received grazing permits based on the reduced grazing preferences since the 1940s. The statute of limitations generally begins to run against heirs to enforce rights and causes of action belonging to the heirs' ancestors when it begins to run against the ancestors. *See* 51 Am.Jur.2d *Limitations of Actions* § 76 (2000). During the years in which Ed Tarnavsky and his predecessors were receiving grazing permits, they knew or reasonably should have known of the difference in grazing preferences. We therefore reject Ed Tarnavsky's reliance on the discovery rule to save his claims from the statute of limitations.

[¶ 13] We also reject Ed Tarnavsky's claim that his annual application for grazing permits and the issuance of grazing permits based on the grazing preferences and the history of the Tarnavsky ranch is a continuing wrong. Assuming the release of grazing preferences in the 1940s was wrongful conduct, the annual issuance of grazing permits is the result of the alleged wrongful acts in the 1940s and any action based on those acts has long since been barred by the statute of limitations.

[¶ 14] We need not decide whether the six-year or the ten-year statute of limitations governs Ed Tarnavsky's action, because we conclude the alleged wrongdoing in this case occurred well outside either statute of limitations. Because of our resolution of this issue, we need not address the other issues raised by Ed Tarnavsky.

[¶ 15] We affirm the summary judgment.

[¶ 16] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.