2009 ND 137

**STATE of North Dakota, by NORTH DAKOTA DEPARTMENT OF LABOR, for the benefit of Evert Johnson, Plaintiff and Appellant**

v.

**MATRIX PROPERTIES CORPORATION, f/k/a E.W. Wylie Corporation, Wild & Associates, Ltd., and Ulteig Engineers, Inc., Defendants and Appellees.**

No. 20080224.

Supreme Court of North Dakota.

July 21, 2009.

Michael Trent Pitcher, Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for plaintiff and appellant.

Krista L. Andrews (argued), and Gregory L. Thompson (on brief), Anderson, Bottrell, Sanden & Thompson, Fargo, N.D., for defendants and appellees Matrix Properties Corp. and Ulteig Engineers, Inc.

Brian P. Toay (argued) and John V. Boulger (on brief), Wold Johnson, P.C., Fargo, N.D., for defendant and appellee Wild & Associates, Ltd.

Margaret Moore Jackson (on brief) and Daniel Michael Schaffzin (on brief); Lori Conroy (on brief), Tobis Funk (on brief), Diane Wehrman (on brief), third-year law students, University of North Dakota School of Law, Law School Room 2, Grand Forks, N.D., for amici curiae Fair Housing of the Dakotas; AARP; National Fair Housing Alliance; The Arc of North Dakota; Dakota Center For Independent Living; Freedom Resource Center for Independent Living; Independence, Inc.; Legal Services of North Dakota; North Dakota Disabilities Advocacy Consortium; North Dakota Human Rights Coalition; North Dakota Statewide Independent Living Council; and Options Interstate Resource Center for Independent Living.

David Boeck (on brief), Bismarck, N.D., for amicus curiae Protection & Advocacy Project.

VANDE WALLE, Chief Justice.

[¶ 1] The State, by the Department of Labor for the benefit of Evert Johnson

("State"), appealed from a summary judgment dismissing its discriminatory housing practice action against Matrix Properties Corporation, formerly known as E.W. Wylie Corporation, Wild & Associates, Ltd., and Ulteig Engineers, Inc. (collectively "Matrix"), on the ground that the action was barred by the applicable statute of limitations. Because we conclude the district court did not err in ruling the State's action is barred by the two-year statute of limitations in 42 U.S.C. § 3613(a) and N.D.C.C. § 14–02.5–39, we affirm.

I

[¶2] In December 2005, the Department received a complaint from Johnson, who is disabled and uses a wheelchair. Johnson alleged that Matrix had committed discriminatory acts by failing to comply with the design and construction requirements under federal and state law for the Stonebridge Apartments in Fargo. Stonebridge Apartments consists of five separate, three-story, walk-up buildings containing 48 units in each building and an underground parking garage. Each building received a certificate of occupancy from Fargo when construction on the building was completed. The building in which Johnson resided received its certificate of occupancy from the city in 1998. Following an investigation, the Department issued a determination of reasonable cause and a charge of discrimination against Matrix in January 2007, and Matrix elected to have the claims decided in district court. *See* N.D.C.C. § 14–02.5–30.

[¶3] Matrix moved for summary judgment dismissal of the action, claiming it was barred by the two-year statute of limitations under the federal Fair Housing Act, 42 U.S.C. § 3601 et. seq. ("FHA"), and the state Housing Discrimination Act, N.D.C.C. ch. 14–02.5. The district court, relying on *Garcia v. Brockway*, 526 F.3d 456 (9th Cir.) (en banc), *cert. denied sub nom., Thompson v. Turk*, — U.S. —, 129 S.Ct. 724, 172 L.Ed.2d 725 (2008), held the statute of limitations required that any action concerning the design and construction of the apartment building must be brought within two years from the issuance of the certificate of occupancy in 1998, and because the civil action was not brought until 2005, the court concluded it was time barred and dismissed the action. The court also dismissed without prejudice the State's alternative claim that Matrix had engaged in a pattern or practice of discrimination because the State had failed to first make an administrative determination of reasonable cause.

II

[¶4] The only issue the State raises on appeal is whether the district court erred in ruling its civil action based on an alleged discriminatory housing practice was barred by the two-year statute of limitations in 42 U.S.C. § 3613(a)(1)(A) and N.D.C.C. § 14–02.5–39(1).

[¶5] In *Grinnell Mut. Reinsurance Co. v. Thies*, 2008 ND 164, ¶5, 755 N.W.2d 852 (citations omitted), we outlined our standard for review of summary judgments:

Summary judgment is a procedural device for promptly resolving a controversy on the merits without a trial if either party is entitled to judgment as a matter of law, and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. A party moving for summary judgment has the burden of proving there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. In considering a motion for summary judgment, a court must

view the evidence in the light most favorable to the party opposing the motion and must give that party the benefit of all favorable inferences that reasonably can be drawn from the evidence. Whether a district court properly granted summary judgment is a question of law that we review de novo on the record.

The determination of when a cause of action accrues is generally a question of fact, but if there is no dispute about the relevant facts, the determination is a question of law for the court. *See Tarnavsky v. McKenzie County Grazing Ass'n*, 2003 ND 117, ¶ 9, 665 N.W.2d 18.

### III

[¶ 6] The Legislature adopted North Dakota's Housing Discrimination Act, N.D.C.C. ch. 14–02.5, in 1999. *See* 1999 N.D. Sess. Laws ch. 134. The legislation was designed to accomplish two goals: "First, it establishes a regulatory authority and administrative process for receiving and investigating charges of housing discrimination under state law ... Second[ ], it provides for state enforcement of federal fair housing law, provided that its provisions are 'substantially equivalent' to ... those in the Federal Fair Housing Act." *Hearing on HB 1043 Before House Judiciary Comm.*, 56th N.D. Legis. Sess. (Jan. 12, 1999) (written testimony of Mark Bachmeier, Interim Department of Labor Commissioner). The "substantial equivalency" component was "the key to the federal portion of funding" because "[a]gencies enforcing state or local laws with provisions substantially equivalent to those of the Federal Fair Housing Act are eligible to receive federal funds from HUD [Department of Housing and Urban Development] to investigate charges of housing discrimination filed under federal law." *Hearing on HB 1043 Before Senate Appropriations Comm.*, 56th N.D.

Legis. Sess. (March 25, 1999) (written testimony of Mark Bachmeier, Interim Department of Labor Commissioner). According to the State, North Dakota's Housing Discrimination Act has been certified by the Secretary of HUD as being substantially equivalent to the rights, procedures, and remedies created under the federal FHA. *See* 42 U.S.C. § 3610(f)(3)(A). Under the federal and state acts, "discrimination" is defined to include a failure to "design and construct" covered multifamily dwellings that comport with certain accessibility requirements for handicapped persons. *See* 42 U.S.C. § 3604(f)(3)(C); N.D.C.C. § 14–02.5–06(3)(c).

[¶ 7] Under 42 U.S.C. § 3613(a) and N.D.C.C. § 14–02.5–39, an aggrieved person may bring a civil action to enforce these design and construction requirements. However, the civil action must be brought "not later than the second year after the date of the occurrence or the termination of an alleged discriminatory housing practice." N.D.C.C. § 14–02.5–39(1); *see also* 42 U.S.C. § 3613(a)(1)(A) ("not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, ... whichever occurs last"). The State argues the two-year limitation period began to run only when Johnson discovered the design and construction flaws in the Stonebridge Apartments, and the lawsuit was therefore brought in a timely manner. Matrix and the other defendants argue, and the district court concluded, the two-year limitation period began to run in 1998 when Fargo issued the certificate of occupancy, and because the lawsuit was not brought until 2005, it is time barred.

[¶ 8] The interpretation of 42 U.S.C. § 3613(a)(1)(A) and N.D.C.C. § 14–02.5–39(1) presents a question of law. *See Sauby v. City of Fargo*, 2008 ND 60, ¶ 8, 747

N.W.2d 65. The rules of statutory construction are well established:

> The primary objective in interpreting a statute is to determine the intent of the legislature by first looking at the language of the statute. *Amerada Hess Corp. v. State ex rel. Tax Comm'r*, 2005 ND 155, ¶ 12, 704 N.W.2d 8. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined in the code or unless the drafters clearly intended otherwise. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–09.1. If the language of a statute is clear and unambiguous, "the letter of the statute cannot be disregarded under the pretext of purs[u]ing its spirit." N.D.C.C. § 1–02–05. A statute is ambiguous if it is susceptible to different, rational meanings. *Amerada*, at ¶ 12. If the language is ambiguous or doubtful in meaning, the court may consider extrinsic aids, such as legislative history, to determine legislative intent. N.D.C.C. § 1–02–39.

*Sauby*, at ¶ 8 (quoting *Simon v. Simon*, 2006 ND 29, ¶ 12, 709 N.W.2d 4).

[¶ 9] The operative language in 42 U.S.C. § 3613(a)(1)(A) and N.D.C.C. § 14–02.5–39(1) is identical. A civil action must be commenced not later than two years after the "occurrence or the termination of an alleged discriminatory housing practice." Although the issue of when the statute of limitations begins to run in a design and construction case brought under the FHA is a question of first impression in North Dakota, the question has been addressed in other jurisdictions.

[¶ 10] In analyzing the language of the statutes, we believe the court's decision in *Moseke v. Miller and Smith, Inc.*, 202 F.Supp.2d 492 (E.D.Va.2002), is instructive. In *Moseke*, at 502, the court examined the language of 42 U.S.C. § 3613(a)(1)(A) to determine when the statute of limitations was triggered. The court focused on the words "occurrence," "termination," and "practice." *Moseke*, at 502. The court noted the word "practice" applied to both "occurrence" and "termination," and reasoned:

> The plain meaning of "practice" as defined by Black's Law Dictionary is: "Repeated or customary action; habitual performance; a succession of acts of similar kind; custom; usage." BLACK'S LAW DICTIONARY 1172 (6th ed.1991). Similarly, another dictionary define[s] the term as: "[H]abitual or customary performance; operation; habit; custom; repeated performance or systematic exercise." RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE—THE UNABRIDGED EDITION 1041 (1973). [U]nder the FHA, it is either the "occurrence" or the "termination" of the discriminatory "practice," which triggers the statute of limitations. The definition of "occurrence" is: "A coming or happening. Any incident or event...." BLACK'S LAW DICTIONARY 1080 (6th ed.1991). When combined, the plain meaning of the "the occurrence ... of a discriminatory housing practice" is a discrete event or incident that encompasses a discriminatory custom. This statutory phrase is also commonly known as the "occurrence rule." *Cf. Hamilton* [*v. 1st Source Bank*], 928 F.2d [86,] 89 [(4th Cir.1990)(en banc)] ("An occurrence rule is based upon the supposition that the adverse act serves to put the employee on notice.") Generally speaking, the occurrence rule ties the running of the limitations period to the occurrence of the act, or omission causing the injury. *Douglas v. Stallings, M.D., Inc.*, 870 F.2d 1242, 1249

(7th Cir.1989); BLACK'S LAW DICTIONARY 1107 (7th ed.1999) (explaining that the "occurrence rule" is "[t]he rule that a limitations period begins to run when the alleged wrongful act or omission occurs, rather than when the plaintiff discovers the injury.")

Turning next to "termination," the definition is: "End in time or existence; close; cessation; conclusion." BLACK'S LAW DICTIONARY 1025 (6th ed.1991). The phrase "the termination of a discriminatory housing practice" thus plainly means the cessation of a discriminatory repeated action.

*Moseke*, at 502–03. The court said "the plain language of the FHA indicates that an act, whether one in a series of many, or a single discrete occurrence, is necessary within the limitations period or the claim falls outside the statute of limitations." *Id.* at 503.

[¶ 11] The State argues the limitation period does not begin to run in design and construction cases until units in the challenged housing development become available to persons with disabilities by conforming to the accessibility requirements under the law, and so long as the units do not conform to those requirements, there is an ongoing discriminatory practice. The State supports its argument by citing to *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), and analogizing design and construction cases to race discrimination cases under the FHA. The State is essentially arguing that the continuing violation doctrine should be applied to design and construction claims under the FHA to extend the statute of limitations.

[¶ 12] In *Havens*, 455 U.S. at 368, 102 S.Ct. 1114, the plaintiffs alleged that apartment employees falsely informed potential black renters there were no available apartments, but informed potential white renters that apartments were available. The United States Supreme Court noted the plaintiffs' claims were "based not solely on isolated incidents ... but a continuing violation manifested in a number of incidents." *Id.* at 381, 102 S.Ct. 1114. The Court adopted the continuing violation doctrine in that context, concluding that "where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the statutory period, running from] the last asserted occurrence of that practice." *Id.* at 380–81, 102 S.Ct. 1114 (footnote omitted).

[¶ 13] However, several courts have refused to apply the continuous violation doctrine to design and construction cases under the FHA. The leading case is *Garcia*, 526 F.3d at 461, in which the en banc Ninth Circuit Court of Appeals held the statute of limitations in a design and construction case under the FHA is "triggered at the conclusion of the design-and-construction phase, which occurs on the date the last certificate of occupancy is issued." In rejecting application of the *Havens* continuing-violation doctrine in design and construction cases, the court reasoned:

Plaintiffs and HUD confuse a continuing violation with the continuing effects of a past violation. "Termination" refers to "the termination of an alleged discriminatory housing practice." The Supreme Court has "stressed the need to identify with care the specific [discriminatory] practice that is at issue." *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 127 S.Ct. 2162, 2167, 167 L.Ed.2d 982 (2007). Here, the practice is "a failure to design and con-

struct," which is not an indefinitely continuing practice, but a discrete instance of discrimination that terminates at the conclusion of the design-and-construction phase. This violation differs from the one Congress codified as "continuing" in light of *Havens,* where the claims were "based not solely on isolated incidents ..., but a continuing violation manifested in *a number of incidents*— including at least one ... that [wa]s asserted to have occurred within the [limitations] period." 455 U.S. at 381, 102 S.Ct. 1114, 71 L.Ed.2d 214 (emphasis added).

Put differently, "[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir.1981) (citing *Collins v. United Air Lines, Inc.,* 514 F.2d 594, 596 (9th Cir.1975)); *see also Moseke v. Miller & Smith, Inc.,* 202 F.Supp.2d 492, 507 (E.D.Va.2002) ("[An] FHA non-compliant building which contains inaccessible features to disabled persons is more akin to a continuing effect rather than a continuing violation under the FHA."). The Supreme Court last Term reiterated the distinction between a continuing violation and continual effects when it held that "current effects alone cannot breathe life into prior, unchanged discrimination; as we held in *Evans,* such effects in themselves have 'no present legal consequences.'" *Ledbetter,* 127 S.Ct. at 2169 (quoting *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)). Although the ill effects of a failure to properly design and construct may continue to be felt decades after construction is complete, failing to design and construct is a single instance of unlawful conduct. Here, this occurred long before plaintiffs brought suit. Were we to now hold the contrary, the FHA's statute of limitations would provide little finality for developers, who would be required to repurchase and modify (or destroy) buildings containing inaccessible features in order to avoid design-and-construction liability for every aggrieved person who solicits tenancy from subsequent owners and managers.... This is not what Congress provided in erecting a two-year statute of limitations for FHA design-and-construction claims. If Congress wanted to leave developers on the hook years after they cease having any association with a building, it could have phrased the statute to say so explicitly.

*Garcia,* at 462–63 (footnotes omitted); *see also, e.g., United States v. Taigen & Sons, Inc.,* 303 F.Supp.2d 1129, 1140–41 (D.Idaho 2003) (refusing to apply continuing violation doctrine); *Moseke,* 202 F.Supp.2d at 507 (same); *State ex rel. Claypool v. Evans,* 757 N.W.2d 166, 171–72 (Iowa 2008) (same). *But see, e.g., Kuchmas v. Towson Univ.,* 553 F.Supp.2d 556, 563 (D.Md.2008) (applying continuing violation doctrine); *Eastern Paralyzed Veterans Ass'n v. Lazarus–Burman Assocs.,* 133 F.Supp.2d 203, 213 (E.D.N.Y.2001) (same). Although there is a split of authority on the issue, *Garcia* is the only federal circuit court of appeals decision to date to directly address the specific issue here. The reasoning in *Garcia* is persuasive and we follow it.

[¶ 14] The State argues we should not follow *Garcia* because "[a]lthough both Acts are substantially similar, the clear words used by the North Dakota legislature in enacting N.D.C.C. ch. 14–02.5 show that the legislature did not intend for the statute of limitations triggering date to be at the completion of the construction of a dwelling." The State mainly focuses on statutes in the Housing Discrimination Act other than the statute of limitations in

N.D.C.C. § 14–02.5–39(1) to support its argument. However, the plain language of the statute of limitations requires an "occurrence or the termination of an alleged discriminatory housing practice," and a "[d]iscriminatory housing practice" is defined as an "act prohibited by sections 14–02.5–02 through 14–02.5–08." N.D.C.C. § 14–02.5–01(7). Consequently, an act or the last of a series of acts triggers the limitation period. In the context of a design and construction case, it is the completion of the construction, rather than the mere existence of a noncompliant building, which constitutes the act that triggers the limitation period. Even if we were to conclude the statute of limitations was ambiguous and considered the legislative history, it provides no support for the State's interpretation. The legislative history sheds no light on when the statute of limitations is triggered, and does not suggest the Legislature intended greater protections for the disabled than provided by the FHA. Rather, the legislative history reveals an overriding concern that the state law be "substantially equivalent" to federal law. *See Hearing on HB 1043 Before Senate Appropriations Comm.*, 56th N.D. Legis. Sess. (March 25, 1999) (written testimony of Mark Bachmeier, Interim Department of Labor Commissioner). We have construed the state statute of limitations in the same manner as the only federal circuit court of appeals to address the question has interpreted the federal statute of limitations.

■ [¶ 15] Amici curiae argue upholding the district court's decision converts the statute of limitations into a statute of repose and runs afoul of *Hanson v. Williams County*, 389 N.W.2d 319, 320 (N.D.1986), in which a majority of this Court held a products liability statute of repose violated the equal protection provision of the North Dakota Constitution.

The State did not raise this issue on appeal, and "[a]n amicus brief must be limited to issues raised on appeal by the parties." N.D.R.App.P. 29(a). Moreover, even if N.D.C.C. § 14–02.5–39(1) was a statute of repose, statutes of repose are not invariably unconstitutional, *see, e.g., Hoffner v. Johnson*, 2003 ND 79, ¶ 1, 660 N.W.2d 909; *Bellemare v. Gateway Builders, Inc.*, 420 N.W.2d 733, 736–37 (N.D. 1988), and amici curiae have failed to marshal a sufficient argument to challenge the constitutionality of the statute. *See, e.g., Ramsey Fin. Corp. v. Haugland*, 2006 ND 167, ¶ 23, 719 N.W.2d 346.

■ [¶ 16] The State and amici curiae contend the FHA and the Housing Discrimination Act should be liberally construed and posit several persuasive public policy arguments to support their proposed interpretation that the statute of limitations is triggered when the aggrieved person discovers the design and construction defect. However, "we do not ignore the clear language of a statute under the guise of liberal construction." *Stein v. Workforce Safety and Ins.*, 2006 ND 34, ¶ 11, 710 N.W.2d 364. Whether public policy would be better served by extending the limitation period indefinitely until an aggrieved person discovers the design or construction defect is a decision to be made by Congress or the Legislature, the policy-making bodies of government. *See, e.g., Loken v. Magrum*, 380 N.W.2d 336, 341 (N.D.1986); *see also* The Lilly Ledbetter Fair Pay Act of 2009, Pub.L. No. 111–2, 123 Stat. 5 (Jan. 29, 2009) (superseding United States Supreme Court's holding in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007)).

[¶ 17] We conclude the two-year statute of limitations was triggered when the building in which Johnson resided received its certificate of occupancy from Fargo in

1998. Because this civil action was not commenced until 2005, the district court did not err in concluding the action was time barred and in granting summary judgment dismissal of the action.

## IV

[¶ 18] The summary judgment is affirmed.

[¶ 19] DALE V. SANDSTROM and DANIEL J. CROTHERS, JJ., concur.

KAPSNER, Justice, dissenting.

[¶ 20] I respectfully dissent. The district court erred by holding the State's action is barred by the two-year statute of limitations of 42 U.S.C. § 3613(a) and N.D.C.C. § 14–02.5–39.

## I

[¶ 21] The district court relied upon *Garcia v. Brockway*, 526 F.3d 456 (9th Cir.2008) to hold that the issuance of a certificate of occupancy began the two-year statute of limitations. The majority follows the district court in this holding. The majority opinion applies a cramped interpretation of the statutes that effectively denies the relief that the housing statutes were designed to give.

[¶ 22] There is no evidence in this record that a certificate of occupancy has any relationship to the requirements of adaptive design of the federal and state statutes. Rather, the certificate of occupancy merely shows that under the municipal codes, the premises may be occupied, which presumably implies that construction is at an end. The *Garcia* court and majority here view construction and design as a limited occurrence that determines a starting point for the application of the statute of limitations. *Garcia*, 526 F.3d at 463.

[¶ 23] The *Garcia* court applied such a notion largely in reliance on *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007), *superseded by statute*, Lilly Ledbetter Fair Pay Act of 2009, Pub.L. No. 111–2, 123 Stat. 5 (Jan. 29, 2009). *Garcia*, 526 F.3d at 462–63. *Ledbetter* has since been determined by Congress to be contrary to congressional intent in its analysis of the statute of limitations. Lilly Ledbetter Fair Pay Act of 2009, Pub.L. No. 111–2, 123 Stat. 5 (Jan 29, 2009).

[¶ 24] In *Ledbetter*, prior to retirement from Goodyear Tire & Rubber Company, Ledbetter filed a claim with the Equal Employment Opportunity Commission ("EEOC") alleging pay discrimination based on sex. 550 U.S. at 621–22, 127 S.Ct. 2162. Subsequently, Ledbetter filed suit, alleging a Title VII pay discrimination claim and an Equal Pay Act of 1963 claim. *Id.* at 622, 127 S.Ct. 2162. As for Ledbetter's Title VII claim, Goodyear asserted the statute of limitations time-barred her claim, because the alleged discriminatory acts did not take place within 180 days of the filing of the complaint with the EEOC. *Id.* at 622, 127 S.Ct. 2162. On appeal to the United States Supreme Court, Ledbetter contended each paycheck she received was a separate act of discrimination, and the string of violations amounted to a continuing violation. *Id.* at 624, 127 S.Ct. 2162. The United States Supreme Court disagreed, holding her claim was a discrete act time-barred by the statute of limitations, rather than a continuing violation. *Id.* at 628, 127 S.Ct. 2162.

[¶ 25] Congress has since enacted the Lilly Ledbetter Fair Pay Act of 2009, which states in relevant part:

an unlawful employment practice occurs, with respect to discrimination in compensation in violation of [Title VII], when a discriminatory compensation de-

cision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

Lilly Ledbetter Fair Pay Act of 2009, Pub.L. No. 111–2, 123 Stat. 5 (Jan. 29, 2009). The Act provides a new claim may be filed each time a paycheck is issued, and it also indicates pay discrimination is a continuing violation. The Act includes the specific congressional finding:

> The Supreme Court in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007), significantly impairs statutory protections against discrimination in compensation that Congress established and that have been bedrock principles of American law for decades. The Ledbetter decision undermines those statutory protections by *unduly restricting the time period in which victims of discrimination can challenge and recover for discriminatory compensation decisions or other practices, contrary to the intent of Congress.*

*Id.* (emphasis added).

[¶ 26] While this Act addresses pay discrimination, rather than discriminatory housing practices or discrimination claims in general, the rationale behind this Act is that the United States Supreme Court erred in its analysis of the statute of limitations. I find this persuasive.

## II

[¶ 27] I disagree with the majority's holding, "[i]n the context of a design and construction case, it is the completion of the construction, rather than the mere ex-

istence of a noncompliant building, which constitutes the act that triggers the limitation period." Majority Opinion at ¶ 14. As the majority notes, our housing statutes were designed to mimic the federal statutes. The clear indication of Congress that the United States Supreme Court has misinterpreted congressional intent on the limitations period to be applied in *Ledbetter* should now inform our decisions about the period of limitations. We should not be basing a decision on the flawed reasoning of *Garcia*, which incorporated the incorrect reasoning of *Ledbetter.*

[¶ 28] The undermined *Ledbetter* decision is also out of step with the United States Supreme Court's prior interpretation of the Fair Housing Act. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), was decided under the Fair Housing Act before the amendments that are at issue in this case were enacted. Nevertheless, *Havens* indicates that the position urged by the State in this appeal is the appropriate position, namely that there can be a continuing violation of the statute and that the period of limitations does not run while the violation continues. *Id.* at 380, 102 S.Ct. 1114. This doctrine of continuing violation is fully supported by the language of both state and federal statutes:

> An aggrieved person may file a civil action in district court not later than the second year after the date of the occurrence or the termination of an alleged discriminatory housing practice or the breach of a conciliation agreement entered under this chapter, whichever occurs last, to obtain appropriate relief with respect to the discriminatory housing practice or breach.

N.D.C.C. § 14–02.5–39(1); *see* 42 U.S.C. § 3613(a)(1)(A).

[¶ 29] Under similar language in the federal statute, courts have held that the ongoing offering for sale or lease of properties which are noncompliant with the adaptive design requirements constitutes a continuing violation.

> 42 U.S.C. § 3613(a)(1)(A) provides "an aggrieved person may commence a civil action ... no later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice ... whichever occurs last." Pub.L. No. 100–430, adding the phrase "or the termination ... whichever occurs last," confirmed application of the continuing violations doctrine in fair housing cases. *See* H.R.Rep. No. 711, 100th Cong., 2d Sess., 18, 22 (June 17, 1988), *reprinted at* 1988 U.S.C.C.A.N. 2173. Under *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 380–81, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), the continuing violations doctrine requires that at least one incident of discrimination must fall within the statute of limitations period. The pivotal date is thus the date of the last alleged violation.

*Montana Fair Housing, Inc. v. American Capital Dev., Inc.,* 81 F.Supp.2d 1057, 1063 (D.Mont.1999) (alterations in original); *see also Kuchmas v. Towson Univ.,* 553 F.Supp.2d 556, 561 (D.Md.2008); *Eastern Paralyzed Veterans Ass'n, Inc. v. Lazarus–Burman Assocs.,* 133 F.Supp.2d 203, 212 (E.D.N.Y.2001); *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.,* 40 F.Supp.2d 700, 710 (D.Md.1999).

[¶ 30] Some courts have treated the owner/lessor differently from the architects and contractors who constructed noncompliant buildings. *See Moseke v. Miller and Smith, Inc.,* 202 F.Supp.2d 492 (E.D.Va.2002), relied upon by the Majority at ¶ 10. There is some logic in this approach since the actions of the architects and builders and their control over the buildings is arguably terminated upon completion of the construction phase. However, the result in *Moseke* could only be applicable to one defendant here and even the courts which recognize *Moseke* indicate that the holding is not applicable to owners/lessors who continue to benefit from non-compliant construction by offering it for sale or lease to persons with disabilities.

> Plaintiffs argue that the relevant provision of the FHA, 42 U.S.C. § 3604, is ambiguous. They note that the statute refers to two different events in time— the design and construction process and the sale or rental of a unit to an individual. Thus, they argue, the statute of limitations in a design and construction claim under section 3604(f)(3)(C) may be interpreted to begin in several ways: 1) the completion of construction; 2) the time an individual encounters and is injured by the noncompliant structure; and 3) when a potential defendant either ceases to have control over accessibility or brings the housing into compliance with the law. Plaintiffs contend that the third interpretation is consistent with the history and purpose of the FHA as well as this Court's previous Memorandum Opinion dismissing the claim against PGAL Architects. Specifically, this interpretation would establish an ongoing duty on the part of the entities in control of a building to make corrections to bring it into compliance with the FHA while limiting the liability of entities whose involvement and control over the accessibility of a building ends once the building is complete.
>
> Plaintiffs' interpretation of the FHA is consistent with *Moseke,* the case this Court relied on in its September 11, 2007 Memorandum Opinion, and supports drawing a distinction between the present Defendants and PGAL Architects. Unlike PGAL Architects, which

took no action after it designed Millennium Hall sometime in 1999–2000, the current Defendants—Collegiate Housing Foundation, Capstone Development Corp., Capstone Properties Corp., and Capstone On–Campus Management, LLC—continue to be involved in the leasing of noncompliant apartments. Thus, even if the true cause of the noncompliance was mere neglect or oversight during the design and construction phases, the remaining Defendants continue to benefit from that oversight by renting inaccessible units while PGAL Architects ceased all involvement with the building in 2000.

*Kuchmas v. Towson Univ.,* 553 F.Supp.2d 556, 562–63 (D.Md.2008).

[¶ 31]  Most fundamentally wrong with the majority's analysis is its separation of a single subsection from the interpretation of the statute as a whole.  A construction violation is a form of discrimination that violates the general prohibition against discrimination contained in the overarching provisions of the statutes, which in North Dakota are contained in N.D.C.C. § 14–02.5–06, subsections (1) and (2). Subsection (3) is a definitional section that gives content to subsections (1) and (2), not a section totally divorced from the rest of the statute.  42 U.S.C. § 3602(f) and N.D.C.C. § 14–02.5–01(7) indicate a discriminatory housing practice includes actions prohibited by 42 U.S.C. § 3604(f) and N.D.C.C. § 14–02.5–06.  Section 14–02.5–06(1)–(3), N.D.C.C., provides in relevant part:

1.  A person may not discriminate in the sale or rental of, or make unavailable or deny, a dwelling to any buyer or renter because of a disability of the buyer or renter; of an individual residing in or intending to reside in that dwelling after it is sold, rented, or made avail-

able; or of any individual associated with the buyer or renter.

2.  A person may not discriminate against an individual in the terms, conditions, or privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with the dwelling because of a disability of that individual; of an individual residing in or intending to reside in that dwelling after it is sold, rented, or made available; or of any individual associated with that individual.

3.  In this section, discrimination includes:

. . . .

c.  The failure to design and construct a covered multifamily dwelling in a manner that allows the public use and common use portions of the dwellings to be readily accessible to and usable by individuals having a disability[.]

42 U.S.C. § 3604(f) is substantially similar.

[¶ 32]  In *Garcia,* 526 F.3d at 469, the dissent discussed concerns that I hold:

The most natural reading of these provisions is that the FHA's statute of limitations is triggered when someone is aggrieved by one of the unlawful actions specified by § 3604(f)(1) [and N.D.C.C. § 14–02.5–06(1) ] or § 3604(f)(2) [and N.D.C.C. § 14–02.5–06(2) ], with the two-year period running from the occurrence or termination of the offending practice.  The limitations period for a disabled would-be buyer or renter or tester thus begins (at the earliest) when that individual first attempts to buy or rent or tests a FHA-noncompliant unit. . . . Analogously, the limitations period for an actual tenant begins (at the earliest) when the individual first moves into a FHA-noncompliant unit.

(Alterations in original).  (Comparable North Dakota law references inserted into text).  The *Garcia* dissent further ex-

plained it was at these points that it could be said a person with a disability has been discriminated against by a real estate developer or landlord. *Id.* The definition of an "aggrieved person," "any person who claims to have been injured by a discriminatory housing practice," supports this notion. N.D.C.C. § 14–02.5–01(1). Although a building constructed after 1991, when the adaptive design provisions became applicable, has been completed for more than two years, a person may not have attempted to rent it until years later. Such a person is aggrieved by the lack of adaptive design required by the statute, but has no remedy under the majority's interpretation.

[¶ 33] Applying 42 U.S.C. § 3604(f)(3)(C) and N.D.C.C. § 14–02.5–06(3)(c), the majority holds the completion of the construction triggers the statute of limitations. Majority Opinion at ¶ 14. However, an owner who continues to offer for rent or sale a non-conforming unit has not yet terminated a discriminatory housing practice and it is the termination of the discriminatory housing practice that would start the period of limitations. N.D.C.C. § 14–02.5–39(1); 42 U.S.C. § 3613(a)(1)(A). As the *Garcia* dissent notes:

> The activities specified by § 3604(f)(1) [and N.D.C.C. § 14–02.5–06(1)] and § 3604(f)(2) [and N.D.C.C. § 14–02.5–06(2)]—all of which involve taking action against a disabled person "because of" that person's "handicap"—are clearly "unlawful" "discriminatory housing practices" that begin the FHA's limitations period. In contrast, § 3604(f)(3)(C) [and N.D.C.C. § 14–02.5–06(3)(c) are] best read as [ ] specific *example[s]* of the discrimination that in fact become[ ] actionable under § 3604(f)(1) [and N.D.C.C. § 14–02.5–06(1)] and § 3604(f)(2) [and N.D.C.C. § 14–02.5–06(2)] *when* that discrimination takes place "in the sale or rental ... to any buyer or renter," § 3604(f)(1) [and N.D.C.C. § 14–02.5–06(1)], or "against any person in the terms, conditions, or privileges of sale or rental ... or in the provision of services or facilities," § 3604(f)(2) [and N.D.C.C. § 14–02.5–06(2)]. Section [ ] 3604(f)(3)(C) [and N.D.C.C. § 14–02.5–06(3)(c) are] *definitional* provision[s], stating that "discrimination includes ... the [faulty] design and construction of covered multifamily dwellings," rather than [ ] provision[s] that actually sets forth a cause of action. The construction of a FHA-noncompliant building thus no more triggers the FHA's statute of limitations than the creation of any other latent discriminatory condition or policy (e.g., a landlord's policy—as yet unenforced—not to rent to disabled people). It is only when that latent condition or policy results in an action prohibited by § 3604(f)(1) [and N.D.C.C. § 14–02.5–06(1)] or § 3604(f)(2) [and N.D.C.C. § 14–02.5–06(2)] that the limitations period begins. Beforehand, the improperly designed building (and the landlord's unimplemented rental policy) are much like a potentially dangerous ditch into which no one has yet fallen—*capable* of inflicting harm and violating the law, but not yet actually doing either.

526 F.3d at 470–71. (Comparable North Dakota law references inserted into text).

[¶ 34] It appears from the record Johnson rented the apartment in March 2005 and moved out of the apartment in October 2005. Johnson's claim was timely.

### III

[¶ 35] The majority notes amici curiae contend affirming the district court's decision turns the statute of limitations into a statute of repose. Majority Opinion at ¶ 15. However, the State did not raise this

issue on appeal; therefore, the majority does not address this issue. *Id.* Even though the State did not raise this issue on appeal, affirming the district court decision turns the statute of limitations into a statute of repose; therefore, discussion of this issue is necessary.

[¶ 36] This Court has distinguished statutes of repose and statutes of limitation:

> Statutes of repose are different from statutes of limitation, although they have comparable effects. A statute of limitation bars a right of action unless it is filed within a specified period of time after an injury occurs. The purpose of a statute of limitation is to prevent "plaintiffs from sleeping on their legal rights to the detriment of defendants". A statute of limitation period commences either upon the occurrence of an injury, or when the injury is discovered. A statute of limitation must allow a reasonable time after a cause of action arises for the filing of a lawsuit.
>
> A statute of repose terminates any right of action after a specific time has elapsed, regardless of whether or not there has as yet been an injury. A statute of repose period begins to run from the occurrence of some event other than the event of an injury that gives rise to a cause of action and, therefore, bars a cause of action before the injury occurs. A person injured after the statutory period of repose is left without a remedy for the injury.

*Hoffner v. Johnson,* 2003 ND 79, ¶ 9, 660 N.W.2d 909 (quoting *Hanson v. Williams County,* 389 N.W.2d 319, 321 (N.D.1986)) (citations omitted).

[¶ 37] While I agree with the majority that statutes of repose are not invariably unconstitutional, interpreting the statute of limitations at issue in this case as a statute of repose is contrary to the plain language of the statutes. 42 U.S.C. 3613(a)(1)(A) and N.D.C.C. § 14–02.5–39(1) provide an "aggrieved person" may file a civil action. An "aggrieved person" is defined as "any person who claims to have been injured by a discriminatory housing practice or believes that the person will be injured by a discriminatory housing practice that is about to occur." N.D.C.C. § 14–02.5–01(1); *see* 42 U.S.C. 3602(i). To qualify as an aggrieved person, a person has to have been injured or has to foresee a future injury. N.D.C.C. § 14–02.5–01(1); *see* 42 U.S.C. 3602(i). This Court has held the termination of a statute of repose is not contingent on whether a person has been injured. *Hoffner,* 2003 ND 79, ¶ 9, 660 N.W.2d 909 (citation omitted). Therefore, the outcome of this case leaves our precedent and the plain language of the statute contradicting one another. *See Garcia,* 526 F.3d at 472 (Fisher, J., dissenting).

IV

[¶ 38] The district court erred by holding the State's action is barred by the two-year statute of limitations of 42 U.S.C. § 3613(a)(1)(A) and N.D.C.C. § 14–02.5–39(1). If, as the majority opinion permits, an owner of a building can simply survive two years after the construction without litigation, the owner can continue to reap the benefits of noncompliant construction and persons with disabilities are denied the protections that were intended by federal and state statutes. Modifying the explicit finding of the United States Congress in January 2009, "[t]he limitation imposed by the Court on the filing of discriminatory [housing] claims ignores the reality of [housing] discrimination and is at odds with the robust application of the civil rights laws that Congress intended." Lilly Ledbetter Fair Pay Act of 2009, Pub.L.

No. 111–2, 123 Stat. 5 (Jan. 29, 2009). Therefore, I respectfully dissent.

[¶ 39] MARY MUEHLEN MARING, J., concur.